[Civ. No. 38565. First Dist., Div. Four. Feb. 2, 1977.]

MILFORD H. REIMAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
Respondents.

**COUNSEL**

Watson A. Garoni for Petitioner.

Philip Miyamoto, Alvin R. Barrett, Michael H. Salinsky, Pillsbury, Madison & Sutro, Nobel K. Gregory and Lloyd A. Carlson for Respondents.

## OPINION

**RATTIGAN, J.**—Milford H. Reiman (hereinafter applicant) is the recipient of benefits in a proceeding conducted pursuant to the workers' compensation law. Respondent Pacific Telephone & Telegraph Company, his permissibly self-insured employer (the Company), has regularly paid him workers' compensation benefits as required by an award made in the proceeding in 1965. It has also paid him so-called "Other Benefits" pursuant to a private program which it maintains for the support and welfare of its industrially disabled employees.

After the Company had paid him both types of benefits for several years, applicant petitioned respondent Workers' Compensation Appeals Board for an additional award for self-procured medical treatment. A board referee granted him a substantial award, but allowed the Company a lien against it in the amount of the "Other Benefits" previously paid him. The board upheld the lien in an "Opinion And Decision After Reconsideration," and we granted applicant's petition for review. Having analyzed the "Other Benefits" and the program under which they were paid him, we have concluded that the workers' compensation law does not entitle the Company to the lien claimed, nor to credit in any form, for the payments made. We annul the opinion and decision accordingly.

Applicant commenced the proceeding after he had been injured in an industrial accident in 1963. The injuries were severe, resulting in partial and irreversible paraplegia. In 1965, pursuant to a stipulation of the parties, he was awarded a permanent disability rating of .100 percent permanent disability benefit payments for 400 weeks, a life pension thereafter, and "further medical treatment" as necessary. The Company complied with the 1965 award in all respects, and has paid a provisional lien with additional benefits.

All of the additional benefits (including but not limited to the "Other Benefits") have been paid or provided pursuant to various features of the Company's "Plan For Employees' Pensions, Disability Benefits and Death Benefits" (hereinafter the Plan), which was adopted by its board of directors, in documentary form and under the title quoted, many years

ago. As pertinent to the present proceeding, the Plan itself includes these provisions:

It is administered by an "Employees' Benefit Committee" whose members are appointed by the Company's board of directors. "Accident disability benefits" will be paid, in money, to employees of the Company who have been disabled by accidental injuries sustained in the course of their employment. The benefits are payable periodically, and indefinitely, but their amounts are determined according to a schedule based upon the particular employee's years of service. They "include" benefits payable to him under the workers' compensation law, but supplement them, in effect, by exceeding them in amount.

The "Other Benefits" program exists, independently of the Plan itself, under a resolution adopted by the Company's board of directors in 1964. The resolution provides in pertinent part "that the Employees' Benefit Committee, in addition to its duties under the Plan . . . shall have jurisdiction over the following matters, with authority to take all necessary action and to make payments in connection therewith . . . (1) Relief measures, including the payment of salary during absence from work, in case of . . . accident to active employees, when such cases are not provided for or, in the Committee's judgment, are inadequately provided for by the Plan . . . ."[1]

In the present case, and pursuant to the Plan proper, the Company has paid him "accident disability benefits" which have included and supplemented the workers' compensation benefits due him under the 1965 award. Between 1964 and 1973, it also paid him varying amounts of money periodically as "living expenses," financed certain physical "modifications" of his home to accommodate his use of a wheelchair, and has purchased two hand-controlled automobiles for his personal use. These benefits were paid and provided under the "Other Benefits" program described above, upon continuing examination of his personal situation by the employees' benefit committee and in the exercise of the committee's unlimited judgment pursuant to the 1964 resolution which established the program. (See the text at fn. 1, *ante.*)

[1]The resolution enumerates and describes three other such "matters," of which one is "(3) Loans or salary advances (before the salary has been earned) to active employees in cases of financial emergency or distress." With this exception, the resolution neither states nor imports that any moneys paid by the Company to an employee are reimbursable by him.

By mid-1973, the "Other Benefits" paid applicant in money had totalled between $11,000 and $12,000. The modifications of his home and the automobiles, also provided him as "Other Benefits," had cost approximately $7,000. (We recite these figures in round numbers because, as will appear, their precise amounts are not at issue.)

In January 1973, applicant and Barbara Jean Reiman, his wife, petitioned the appeals board for an order reimbursing Mrs. Reiman for "practical nursing services" which applicant conceived to be self-procured medical treatment. It was alleged in the petition that Mrs. Reiman had performed the services for him since he was injured in 1963, that she had "never been paid" by the Company for them, and that she would continue to perform them. In February 1973, Mrs. Reiman herself filed a "Notice and Request for Allowance of Lien" in which she claimed a lien, for her services, against any award to be made to applicant upon the petition.

The petition and lien claim were heard by a board referee in April 1973, and were vigorously opposed by the Company. The principal issues heard involved the nature and extent of Mrs. Reiman's services to applicant, his need for them, and their value. The benefits previously and currently paid him by the Company were mentioned, at the hearing, but only in passing and without description or elaboration.[2]

On June 15, 1973, the referee granted the petition and claim of lien by filing an "Award For Self-Procured Medical Treatment" with a supplemental report. In the report, and among other things, she stated her determinations that "this case is governed by *Henson* vs. *WCAB* (Standard Oil Company) 37 CCC 654 and that Mrs. Reiman is entitled to payment for the reasonable value of her services."[3] The award was in applicant's favor and against the Company in the amounts of "(a) $55,598.50 for the reasonable cost of the medical treatment furnished by lien claimant, Barbara Jean Reiman, to and including May 17, 1973, less

[2] Applicant testified that he had been receiving regular monthly payments of $432.50 from the Company, "including workmen's compensation *and* any benefits that the Company has in . . . [its] . . . benefit program." None of the latter "benefits" was otherwise described, the Company made no showing concerning them, and no one suggested that they should be taken into account by the referee in her assessment of applicant's petition or of the amount of any award to be made him.

[3] The decision cited is *Henson v. Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 452 [103 Cal.Rptr. 785], in which a long-term, retroactive award for a wife's nursing services was sustained on parallel facts. It fairly appears that the *Henson* decision prompted the petition for the award made here.

. . . [a lien allowed] . . . Barbara Jean Reiman in the sum of $49,048.40"; and of "(b) $18.00 a day commencing May 18, 1973 and continuing indefinitely . . . ."

The Company made its now-disputed claim of lien by filing a "Notice and Request for Allowance of Lien" on July 6, 1973 (21 days after the award had been filed on June 15).[4] It therein claimed a lien, against the award, in the total amount of the money payments it had "voluntarily" made to applicant since 1964, and for the $7,000 it had "voluntarily" expended on his home and automobiles, under the "Other Benefits" program.

The Company's lien claim was heard by the same referee who had ordered the June 15 award. The sole witness at this hearing was Edwin McWain, an employee of the Company and the administrative director of the Plan. He described the Plan and the "Other Benefits" program as recited above, and the procedure by which the various expenditures had been made to applicant, or for him, under the latter program. The Company's 1964 resolution establishing the "Other Benefits" program (quoted at fn. 1, *ante*) was received in evidence.

The referee thereupon filed an "Order Allowing Lien Claim" in which she allowed the Company's claim of lien as to the "Other Benefits" it had paid to applicant in money (subject to the parties' determination of their actual amount from records of their payment), but disallowed its claim as to the $7,000 it had paid for the modification of his home and for the automobiles.

Applicant petitioned the appeals board for reconsideration of this order upon several bases. As pertinent to the present review, they included (1) the substantive ground that the "Other Benefits" paid and provided him had been "gifts," by the Company, for which the workers' compensation law did not permit a lien; and (2) the procedural ground that the Company was barred from claiming a lien for them because it had not claimed their sum as an "offset" in the proceeding upon his petition for the award which was made on June 15, nor had it petitioned for reconsideration of the award thereafter. (See fn. 4, *ante*.)

---

[4]This chronology is pertinent because, although the Company did not at any time petition for reconsideration of the June 15 award itself, it filed its claim of lien during the period within which a timely petition for reconsideration might have been filed. (Lab. Code, § 5903. See Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 10.5, p. 323.) The procedural distinction arising from these facts is later discussed in the text.

The Company answered the petition, and the referee filed a written report concerning her order. In its "Opinion And Decision After Reconsideration" which followed (and which is presently under review), the appeals board upheld the order in all respects. Speaking to the allowance of a lien to the Company for the "Other Benefits" it had paid applicant in money, the board noted that the payments had been made for his "living expenses" and summarized the details of the Plan, of the "Other Benefits" program, and of McWain's testimony, as recited above. The board then met applicant's "gift" argument by quoting both the Company's answer and the referee's report, as follows (italics added):

"In . . . [its] . . . verified answer to the Petition for Reconsideration, the . . . [Company] . . . remarked: 'It is true that defendant [the Company] *never expected or sought repayment of the amounts granted* under the "Other Benefit" program for necessary living expenses until applicant received his award of June 15, 1973, for self-procured medical treatment in nature of payment for services rendered by Mrs. Reiman. Had the Company known from the outset that it would have to pay for such services and, thus, the family's income would have been substantially increased thereby, it would not have made any payment to applicant under the "Other Benefit" program. The situation was dramatically changed by the award of June 15, 1973, and it thereupon developed that the parties had been previously laboring under a mistaken belief as to the family income . . .'

"Commenting upon the Petition for Reconsideration, the workers' compensation judge stated as follows: ' . . . *I did not feel they were gifts* since at the time they were furnished the law did not provide for payment to the wife for her services. I do not believe that the employer would have provided this money had it any idea whatsoever that at a later date the applicant would claim payment for the wife's services as he has done. I do not see how *it can be considered a gift under the circumstances* . . .'

"Thus, the Board cannot agree with the contentions of the applicant that a *credit* should be denied the . . . [Company] . . . on the theory that *a gift was intended.*"

Continuing, the appeals board sustained the allowance of a lien for the money payments upon the further-stated theory that the Company was entitled to a "credit," pursuant to Labor Code section 4909,[5] "as a proper exercise of the discretion of the Board." Finally, it upheld the disallowance of the Company's remaining claim of lien upon the ground that the "Other Benefits" it represented (i.e., the modifications of applicant's home and the automobiles purchased for him) were not properly the subjects of a lien because they were not included within the list of such subjects set forth in Labor Code section 4903;[6] that they were not described in the definition of "[m]edical, surgical, and hospital treatment" which the Company was required to furnish by section 4600; and that they were therefore *in the nature of a gift or gratuity,* for which no *lien or credit* is available."

Applicant's subsequent petition, to this court, sought review of the "Opinion and Decision" only insofar as it allows the Company a lien for the "Other Benefits" it had paid him in money. We first observe that the Company's argument in its answer and the referee's comments in her report, to both of which the "Opinion and Decision" referred as quoted above, stated opposing theories upon the issue whether the "Other Benefits" paid in money were a "gift." The Company made them out to have been a gift, in the first instance, by stating that it "never expected or sought repayment" of the payments when they were made, but contended in effect that the first-instance gift was somehow revocable, by reason of the changed circumstances brought about by the award of June 15, 1973, to the extent that a lien could thereafter be allowed for them. The referee concluded that a lien could be allowed for them upon the contrasting basis that they could not have been "considered a gift" in the first instance. The board adopted the referee's view by explicitly rejecting applicant's "theory that a gift was intended."

---

[5]"4909. Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, or by his dependents in the event of his death, which by the terms of this division [i.e., of the workers' compensation law] was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit *may be taken into account* by the appeals board in fixing the *amount of the compensation to be paid.* The acceptance of any such payment, allowance, or benefit shall not operate as a waiver of any right or claim which the employee or his dependents has against the employer." (Italics added.)

[6]Section 4903 first states that "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (g) of this section." The only subdivision pertinent here is (c), which permits a lien for "[t]he reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury."

■ In our view, the Company's argument begs the real question and the board has arrived at the wrong answer. The question is framed by the undisputed premise that the Company's payments were in fact "living expenses," and by the rule that an employer may not be allowed a lien for "living expenses" advanced to an injured employee if it intended them to be a gift when it paid them. (*Ila* v. *Hardy and Calif. Comp. Ins. Co.* (1953) 18 Cal.Comp. Cases 241.)

The rule derives from the statutory context in which the section permitting liens appears (Lab. Code, § 4903: see fn. 6, *ante*), preceded by a section which states that "[n]o claim for compensation nor compensation awarded, adjudged, or paid, is subject to be taken for the *debts* of the party entitled to such compensation *except as hereinafter provided.*" (Lab. Code, § 4901 [italics added].) As liens against compensation are "hereinafter provided" in section 4903, it follows that a lien may be allowed for items enumerated in that section (which includes "living expenses" in subdivision (c) as quoted in fn. 6, *ante*) only if they are in fact "debts" and not "gifts."

"A gift is a transfer of personal property, made voluntarily, and without consideration." (Civ. Code, § 1146.) In its formal claim of lien for the "living expenses" it had paid applicant under its "Other Benefits" program, the Company explicitly alleged that the payments had been made "voluntarily." They were obviously made "without consideration," because nothing in the program provides for their reimbursement (see fn. 1, *ante*); the Company has alleged throughout the lien proceeding that it did not expect to be reimbursed for them when they were made, the appeals board expressly quoted it to this effect in the "Opinion And Decision" under review, and Edwin McWain testified to the same effect without contradiction. According to the undisputed evidence, the payments were therefore "gifts" from the Company when they were made.

This being so, the change in circumstances attending the award of June 15, 1973, did not permit the Company to recover its "gifts" by way of claiming a lien against the award. Although Civil Code section 1148 provides that a gift may not be revoked by the giver, there is authority for the proposition that he may *rescind* it upon the ground of "mistake" which the Company has suggested here. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 105, pp. 1698-1699.) That authority may not avail the Company's claim of lien, however, because its position is controlled by the provisions of the workers' compensation law which limit the allowance of liens to "debts" (Lab.

Code, §§ 4901, 4903) and do not permit them for "gifts." (*Ila* v. *Hardy and Calif. Comp. Ins. Co., supra,* 18 Cal.Comp. Cases 241.)

There was accordingly no legal basis, and no evidence, which warranted the appeals board in allowing a lien for the "Other Benefits" paid in money where it had disallowed one for those which it identified as a "gift or gratuity." The money benefits having been "gifts" in the first instance, they could not be otherwise defined because they were "living expenses" for which Labor Code section 4903, subdivision (c), permits a lien by definition (see fn. 6, *ante*); as we have seen, that statute does not permit a lien for "gifts" of any description.

 The foregoing conclusions having invalidated the *lien* allowed for the "Other Benefits" paid in money, we are remitted to the appeals board's alternative view that the Company was entitled to "credit" for them pursuant to Labor Code section 4909. (See the text at fn. 5, *ante*.) The alternative point involves the procedural argument made by applicant, to the board and in this court, that no such "credit" was available to the Company because it claimed none when the underlying award was pending and did not petition for reconsideration after it was made on June 15, 1973. (See fn. 2, *ante*.) We mention these matters because they were prompted in part by our own inquiries of counsel, and because the parties have debated them at length.

The appeals board filed a brief, and its counsel appeared at oral argument, at our request. Counsel has informed us in effect that the board itself diffused the conceptual distinction between a "lien" permitted by Labor Code section 4903 and a "credit" authorized by section 4909 (see fns. 5 and 6, *ante*); that the board had deemed the Company entitled to "credit," in any event and upon the exercise of its (the board's) discretion, although none was claimed when the since-debited award was pending; and that the board did not consider the entitlement to "credit" to have been barred by the Company's failure to petition for reconsideration of the award because its *lien* had been claimed within the jurisdictional time limit permitted for a petition (see fn. 4, *ante*) and applicant had consequently not been "prejudiced."

While we appreciate the board's assistance as requested, we question whether the de facto dimunition of the award of June 15, 1973, by subsequent application of a "credit" against it pursuant to Labor Code section 4909, was permissible in light of the rule which insulates any award from judicial review in the absence of a petition for reconsidera-

tion. (See Lab. Code, § 5901; Cal. Workmen's Compensation Practice, *op. cit., supra,* § 10.1, p. 321.) We have concluded, however, that we need not decide the procedural question presented. In *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254 [78 Cal.Rptr. 497, 455 P.2d 425], the Supreme Court quoted with approval language employed by the former Industrial Accident Commission in *Stan* v. *California Golf Club* (1943) 8 Cal.Comp. Cases 209, with reference to Labor Code section 4909, as follows: " 'The Commission has held and the courts, without a single exception, have sustained us in the position that, following an industrial injury and during total disability in the absence of an agreement to the contrary, any payments of wages, either in whole or in part, constitutes compensation at least to the extent disability indemnity is payable, and therefore tolls the statute of limitations as against the injured employee. . . . [¶] This policy is definitely in the interest of justice to the injured employee and should not be disturbed. We should not now, *without anything in evidence to indicate that the payment of wages was intended as a gift or gratuity,* contend that such payment was not compensation and that the employer or his representative is entitled to no credit therefor.' " (*Herrera* v. *Workmen's Comp. App. Bd., supra,* 71 Cal.2d 254 at p. 258 [deletions and italics by the *Herrera* court].)

It thus appears Labor Code section 4909 does not entitle the Company to a "credit," in any event, for the "Other Benefits" it paid in money as "a gift or gratuity."

To the extent that it is challenged by the petition for review heretofore granted, the decision of the Workers' Compensation Appeals Board is annulled. The cause is remanded to the board for proceedings consistent with the views herein expressed.

Caldecott, P. J., and Christian, J., concurred.