[Civ. No. 5951. Fifth Dist. May 6, 1981.]

LUNETTE OTT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
Respondents.

Counsel

Chain, Younger, Jameson, Lemucchi, Busacca & Noriega and David K. Cohn for Petitioner.

Alfred Lombardo as Amicus Curiae on behalf of Petitioner.

Parker & Dally, Robert L. Dally, Stanford D. Herlick and John F. Parker for Respondents.

Opinion

**ZENOVICH, J.**—This petition for writ of review challenges the propriety of a decision allowing a credit against permanent disability indemnity to respondent Pacific Telephone and Telegraph Company for sums paid under its employee benefit plan. For reasons to be explained, we find that the Workers' Compensation Appeals Board incorrectly allowed the credit, and we annul the order.

Petitioner Lunette Ott (hereinafter Ott) was employed with respondent Pacific Telephone and Telegraph Company (hereinafter Pacific Telephone) as a marketing representative. On January 15, 1970, she was struck by an automobile in a crosswalk and suffered a compensable injury arising out of and in the course of employment to her neck, knees, left hip, left arm and lower back. At all times, Pacific Telephone was duly certified as a self-insured employer. Following a 1973 hearing on the matter, Ott was awarded temporary disability payable at $78.11 per week, and the parties stipulated that Pacific Telephone paid the above amount up through December 4, 1972.[1] In 1974, a referee terminated Pacific Telephone's liability for temporary disability compensation.

Subsequent activity centered upon the permanent disability compensation due to Ott and any credit to be allowed for benefits paid by Pacific Telephone. In late 1979, the parties stipulated to a perma-

---

[1]Specifically, Ott was awarded "Temporary disability indemnity and temporary partial disability as set out ... less credit for all sums advanced against temporary disability indemnity and less credit for $7593.11 against applicant's third-party settlement, ..."

nent disability rating of 55 -3/4 percent, amounting to a total sum of $11,707.50. They also agreed that the claim for self-procured medical treatment was to be offset by Ott's third-party settlement, thereby eliminating any further claim for self-procured treatment. However, the parties never agreed on the credit issue; written argument and oral testimony focused on this dispute at a later hearing.

At that hearing, Pacific Telephone contended that it was entitled to credit in the amount of $13,650 against the permanent disability indemnity. This was based on the fact that Pacific Telephone had paid benefits to Ott since 1975 from its "Plan For Employees' Pensions, Disability Benefits and Death Benefits" (hereinafter Plan), which amounts exceeded the sum allowable under workers' compensation law. Petitioner objected to Pacific Telephone's efforts to obtain a credit for payments made pursuant to the Plan. Oral testimony was adduced from Robert D. Harless, a personnel manager in the San Francisco office of Pacific Telephone's employees' benefits department, and Ott.

Following this hearing, a workers' compensation judge denied "any credit against compensation payment" to Pacific Telephone. The judge disallowed Pacific Telephone's lien claim for $13,650.

Thereafter, Pacific Telephone's petition for reconsideration was granted by the Workers' Compensation Appeals Board (hereinafter Board) on August 11, 1980. The Board set aside the earlier decision of the workers' compensation judge and substituted its decision allowing credit against permanent disability indemnity to Pacific Telephone. Ott then filed the instant petition.

The pertinent evidence for resolution of the petition can be found in selected provisions of Pacific Telephone's Plan and in testimony provided by Robert D. Harless.

In a section summarizing "Accident Disability Benefits," the Pacific Telephone Plan states, "The accident disability benefits specified above include payments required by Workmen's Compensation Laws."

Section 8, paragraph 27, of the Plan provides: "In case any benefit or pension, *which the Committee shall determine to be of the same gener-*

*al character as a payment provided by the Plan*, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; provided, however, that no benefit or pension payable under this Plan shall be reduced by reason of any governmental benefit or pension payable on account of military service or on or after June 1, 1969 by reason of any benefit which the recipient would be entitled to receive under the Social Security Act. In those cases where, because of differences in the beneficiaries, or differences in the time or methods of payment, or otherwise, whether there is such excess or not is not ascertainable by mere comparison but adjustments are necessary, the Committee in its discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to carry out in a fair and equitable manner the spirit of the provision for the payment of such excess." (Italics added.)

Robert D. Harless, a personnel manager at Pacific Telephone's employees' benefits department in San Francisco, expressed familiarity with administration of the Plan under dispute. Harless stated that Pacific Telephone had a committee to which accident cases were referred for consideration of benefit payouts. Harless then testified as follows:

"Q. In the case of Mrs. Ott, was her case submitted to the committee?

"A. Yes, it was.

"Q. And did the committee determine that this was an on-the-job injury?

"A. Yes, it did.

"Q. And did the committee thereafter order benefits be paid in accordance with the plan?

"A. Yes, it did.

"Q. And to your knowledge have those benefits been paid continuously since that date?

"A. Yes, they have." Harless also indicated that the Plan was administered in accordance with its self-contained provisions.

In denying credit to Pacific Telephone, the workers' compensation judge succinctly noted: "... there is no proof that the committee has made a determination as required under Section [8], Para 27 of the plan."

The Board rescinded the decision of the workers' compensation judge and granted credit to Pacific Telephone. It apparently believed that the company had integrated the administration of its workers' compensation liability and its liability under the Plan. The Board stated: "Here, we are persuaded that an amount not to exceed $52.50 weekly of [Pacific Telephone's] payments after January 1975 should be considered as advances of permanent disability indemnity, and that it would not be inequitable to allow a credit in that amount against the award of permanent disability indemnity. (See *Carver* v. *WCAB* (Writ denied) (1980) 45 CCC 331.)"

We dispose of several threshold contentions before addressing the main issue presented by this writ of review.

Ott initially contends that Pacific Telephone is not entitled to a credit for permanent disability payments because its Plan does not *unambiguously* provide for such a credit. She principally relies upon the case of *Russell* v. *Bankers Life Co.* (1975) 46 Cal.App.3d 405 [120 Cal.Rptr. 627], where a credit for permanent disability benefits was disallowed because an insurance contract was ambiguous. *Russell* is distinguishable from the present case in two respects. First, *Russell* involved a standardized insurance policy, which does not resemble Pacific Telephone's Plan.[2] Second, unlike the ambiguous nature of the policy in *Russell* (which only unequivocally credited *temporary* disability benefits), the terms of Pacific Telephone's Plan are clear. Paragraph 27 of the section entitled "General Provisions" allows a credit for "any benefit or pension," thereby incorporating the sections referring to "total/partial accident disability" (§ 5, ¶ 2) and "special benefits" for an acci-

---

[2]The record does not indicate whether the Plan was an accommodation or a negotiated benefit scheme. (See discussion, *infra.*) Nonetheless, at oral argument, Pacific Telephone's appellate counsel represented that the Plan was negotiated with a union representative. Such arms-length bargaining does not correspond to the situation existent in *Russell*, involving an insurance policy whose terms were not subject to negotiation and were not set forth in conspicuous, unambiguous and unequivocal language.

dental injury resulting in permanent loss of a bodily member or loss of its use (§ 5, ¶ 6). Since the plan unambiguously allows Pacific Telephone to offset permanent disability payments against workers' compensation benefits, Ott's first contention does not bar the claim for credit.

Ott then asks that the payments made under the Plan be construed to be gratuitous since there is no proof that the employees' benefit committee (hereinafter Committee) made the pertinent determination under paragraph 27, citing *Reiman v. Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 732 [136 Cal.Rptr. 218]. We find no merit to this position. In *Reiman*, the court refused a credit to Pacific Telephone on the ground that payments from an employee benefit plan were clearly gratuitous in nature. The court noted: "In its formal claim of lien for the 'living expenses' it had paid applicant under its 'Other Benefits' program, the Company explicitly alleged that the payments had been made 'voluntarily.' They were obviously made 'without consideration,' because nothing in the program provides for their reimbursement . . . the Company has alleged throughout the lien proceeding that it did not expect to be reimbursed for them when they were made, the appeals board expressly quoted it to this effect in the 'Opinion And Decision' under review, and Edwin McWain [administrative director of the employee benefit plan] testified to the same effect without contradiction. According to the undisputed evidence, the payments were therefore 'gifts' from the Company when they were made." (*Id.*, at p. 740.) Although the theory in *Reiman* is sound, it provides no solace in the present matter. A valid gift cannot exist unless there is an intent to make a gift on the part of a donor. (3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 84, p. 1685.) The employer in *Reiman* manifested a clear intent to make a gift by not expecting reimbursement for any benefits paid. No such evidence of intent exists here; thus, the gift theory is unavailing to Ott. (See also *Herrera v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 258 [78 Cal.Rptr. 497, 455 P.2d 425] (payments considered compensation "'without anything in evidence to indicate that the payment of wages was intended as a gift or gratuity, . . .'").)

Amicus curiae[3] then argues that there was no entitlement to a credit because no provisions of the Labor Code allow a lien to an employer for

---

[3]Without objection from Ott or Pacific Telephone, we allowed amicus curiae (California Applicants' Attorneys Association) to file a brief and to participate in oral argument on the present matter.

permanent disability benefit payments. (See Lab. Code, §§ 4901, 4903, 4903.1, subd. (c);[4] *Prudential Insurance Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 776 [151 Cal.Rptr. 537, 588 P.2d 239].) We find no merit to this position; amicus curiae confuses the distinction between a "lien" and a "credit" for purposes of the present dispute.

Section 4901 provides: "No *claim for compensation* nor compensation awarded, adjudged, or paid, is subject to be taken for the *debts* of the party entitled to such compensation *except as hereinafter provided.*" (Italics added.) Section 4903 then itemizes the "debts" which may be allowed as liens against a compensation award by the appeals board. (§§ 4903, subds.(a)-(g), 4903.1, subds. (a)-(d).) As noted by our Supreme Court, "These two sections indicate a clear legislative intent to remove such awards from the operation of the usual remedies available to *creditors*, to limit and regulate the kinds of *debts* which may be allowed, and to insure that the award is made available to the injured employee for his recovery and rehabilitation in accordance with the purposes of the act." (*Ogdon v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196-197 [113 Cal.Rptr. 206, 520 P.2d 1022]; see also *Rowland v. Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 448, 451 [136 Cal.Rptr. 1].)

A careful examination shows that Pacific Telephone is not attempting to assert a *lien* (as *creditor*) against the compensation award. Instead, it is merely attempting to gain a *credit* or *offset* against permanent disability benefits disbursed to Ott (which are claimed to be wage payments) of an amount which corresponds to the permanent disability award. Pacific Telephone is not trying to attach a lien to "any sum to be paid as compensation" (see § 4903; Cal. Workmen's Comp. Practice (Cont.Ed.Bar 1973) Lien Claims, § 16.2, p. 575); it is trying to reduce the payments which are disbursed through its Plan by taking a credit for compensation benefits paid. (§ 4909.)[5] Although the lien provisions of the Labor Code do not bar Pacific Telephone's claim for credit, attention focuses on whether the company is entitled to the credit under

---

[4]Unless otherwise indicated, all code references are to the Labor Code.

[5]This conclusion is not altered by our Supreme Court's holding in *Prudential Insurance Co. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 776. In *Prudential*, the court denied a *lien* for loss of time benefits (temporary disability payments) on the basis that these were not allowable liens for medical expense disbursements under either

section 4909 or is contractually obligated to pay benefits over and above the requirements of the workers' compensation laws.

■ An employer is entitled to credit against his workers' compensation liability for any wages or irregular payments in excess of compensation liability which are clearly intended by both employer and employee as an advance on compensation to become due. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1980) § 13.03 [8], p. 13-20.) We find this principle applicable to disbursements from Pacific Telephone's Plan, since the Plan states that disability benefits include compensation liability payments. (Cf. *City etc. of San Francisco v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 1001, 1011-1012 [88 Cal.Rptr. 371, 472 P.2d 459] (agreement between employer and employee regarding the discharge and satisfaction of disability benefits discharged liability for workmen's compensation).) However, we do not believe Pacific Telephone adequately proved that it was entitled to the credit pursuant to the terms of the Plan.

Paragraph 27 of section 8 of the Plan, when literally interpreted, provides that Pacific Telephone only disburses benefit payments in excess of workers' compensation liability as long as the liability payments are determined "to be of the same general character" as a Plan disbursement by the Committee charged with administering the Plan.[6] However, we find nothing in the record indicating that the Committee determined that the permanent disability indemnity was "of the same general character" as Plan benefits. Witness Harless merely testified that the Committee determined the injury was work-related and that benefits were paid in accordance with the Plan. ■ In our opinion, this evidence in no way indicates that the Committee determined the benefit payout was the functional equivalent of workers' compensation liability. Thus, there was no showing that Pacific Telephone was entitled to a credit pursuant to the Plan.

---

section 4903, subdivision (c), or former section 4903.1. In response, the Legislature enacted section 4903.1, subdivision (c), which permits a lien for benefits paid by a group disability policy or self-insured employee welfare benefit plan against a compensation award of temporary disability indemnity. (See Stats. 1979, ch. 855, § 1; *Review of Selected 1979 California Legislation* (1980) 11 Pacific L.J. 259, 683.) The basis for such a lien is that loss of time benefit payments are furnished for living expenses within the meaning of section 4903, subdivision (c). (See Cal. Workmen's Comp. Practice (Cont. Ed.Bar Supp. 1980) Lien Claims, § 16.15A, p. 211.) *Prudential* and the provisions it construed dealt with *liens* asserted by the employer as creditor, a different procedure than the *credit* claimed by Pacific Telephone under section 4909.

[6]The structure and operation of the Committee is detailed in section 3 of the Plan.

Although the company did not qualify for a credit under the Plan, we next consider whether Pacific Telephone adequately met its burden of showing entitlement to a credit by operation of law.

Under section 4909,[7] the allowance of credit for wage payments *voluntarily made* by an employer *with no agreement as to their purpose* is within the Board's discretion. Such a credit effectively discharges the liability of the employer for workmen's compensation. (See *City etc. of San Francisco v. Workmen's Comp. App. Bd., supra,* 2 Cal.3d 1001, 1011-1012; *Herrera v. Workmen's Comp. App. Bd., supra,* 71 Cal.2d 254, 258; *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal. App.3d 856, 866 [157 Cal.Rptr. 355].) Pacific Telephone did present evidence tending to show that administration of benefits under the Plan and payments pursuant to compensation liability were integrated, since Ott received payments in excess of the permanent disability indemnity. However, there is nothing in the record to demonstrate that Pacific Telephone *voluntarily made* payments to Ott—i.e., it is unclear whether the Plan was a statement of company policy about benefit disbursements (voluntary) or was a binding agreement resulting from negotiations with the employees or their bargaining representative (involuntary).[8] The critical inquiry therefore focuses on which party bears the burden of proof on the voluntariness issue.

Two cogent considerations lead to the conclusion that the employer bears the burden of proving the voluntary nature of wage payments so

---

[7]Section 4909 provides: "Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, or by his dependents in the event of his death, which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit may be taken into account by the appeals board in fixing the amount of the compensation to be paid. The acceptance of any such payment, allowance, or benefit shall not operate as a waiver of any right or claim which the employee or his dependents has against the employer."

[8]As we indicated above, Pacific Telephone's appellate counsel represented that the Plan was negotiated with the employees' union. Under such conditions, payments would be involuntary, precluding a credit against compensation liability in favor of Pacific Telephone.

The only evidence *of record* shows that: (1) the Plan was effective as of June 1, 1969; (2) a similar plan had been adopted by other telephone companies and agreements for interchange of benefit obligations had been provided with these other entities; and (3) the president of Pacific Telephone could make changes in the Plan under certain stated conditions. Thus, nothing in the record dispositively shows whether the Plan was an accommodation to employees or a bargained agreement between the parties.

as to gain entitlement to a credit against workers' compensation liability.

First, Pacific Telephone is the "moving party" for purposes of obtaining the credit. Evidence Code section 500 states that, in general, "A party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." In like fashion, section 5705 indicates that "The burden of proof rests upon the party holding the affirmative of the issue."[9] (See also Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 197, pp. 180-181.) Since the credit claimed by an employer is an offset which must be affirmatively proven, the burden of proof logically lies with Pacific Telephone in this case.

Second, policy considerations support the view that the burden should rest upon the employer. Courts have frequently placed the burden of proof on the party having the greater accessibility to evidence on the issue under consideration. (See *Harris* v. *Irish Truck Lines, Inc.* (1974) 11 Cal.3d 373, 378-379 [113 Cal.Rptr. 489, 521 P.2d 481]; Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 198, p. 182; see also Law Revision Commission com. to Evid. Code, § 500, 29B West's Ann. Evid. Code (1966 ed.) p. 431.) The Plan became effective on June 1, 1969, and Pacific Telephone was more likely to have access to information about the plan's "voluntary" or "involuntary" nature. Pacific Telephone's superior access to probative evidence on the voluntariness issue is another reason for having it bear the burden of proof with respect to the credit claimed. Thus, since no evidence was presented by Pacific Telephone concerning the voluntary nature of payments made by it under the Plan, the Board erred in granting credit to the company.

Accordingly, the Board's decision after reconsideration is annulled and the order of the workers' compensation judge disallowing Pacific Telephone's claim is reinstated.

Franson, Acting P. J., and Hopper, J., concurred.

---

[9] Section 5705 then enumerates several *specific* affirmative defenses which must be proven by the employer. (See § 5705, subds. (a)-(e).)