[No. B074408. Second Dist., Div. Five. July 29, 1994.]

DONALD APPLEBY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and PACIFIC BELL,
Respondents.

**COUNSEL**

Lawrence Drasin & Associates and Edward Singer for Petitioner.

Margaret D. Brown, Sarah J. Diehl, R. Bart Kimball and Jonathan L. Daniel for Respondents.

## OPINION

**ARMSTRONG, J.**—We consider whether the Workers' Compensation Appeals Board (Board) properly overruled a workers' compensation judge (WCJ) and allowed "integration" of the private benefits plan of defendant employer Pacific Bell with the California workers' compensation system, by permitting Pacific Bell a credit against an injured employee's permanent disability indemnity for payments made to the injured employee pursuant to the private plan.[1] We have concluded that the Board acted correctly in allowing the credit and affirm the order.

### FACTS AND PROCEDURAL HISTORY

On April 18, 1990, applicant Donald Appleby, a splicing technician, injured his left knee while in the course and scope of his employment at defendant Pacific Bell. As the result of the injury, applicant was totally temporarily disabled on May 23, 1990, and from May 31, 1990, through December 2, 1990.

During that period, applicant received a total of $17,928.40 from Pacific Telesis Group's sickness and accident disability plan (Plan). (Pacific Bell is a subsidiary of Pacific Telesis.) If applicant had received the total temporary disability indemnity payable pursuant to the California workers' compensation schedule of benefits, he would have received only $7,144 during the same period.

On September 1, 1992, applicant and Pacific Bell entered into a compromise and release agreement, whereby applicant was to be awarded $17,325 because he was 30 percent permanently disabled. On November 2, 1992, the parties agreed to submit to the WCJ the issue of whether Pacific Bell was entitled to a credit of $10,784.40 against applicant's permanent disability award, the difference between the amount of Plan benefits paid to applicant

---

[1]The process of "integration" of benefit systems for retired employees was described by Justice Thurgood Marshall in *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504, at page 514 [68 L.Ed.2d 402, at page 411, 101 S.Ct. 1895] as "a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." As subsequent discussion will indicate, "integration" is not limited to retirement systems, but encompasses workers' compensation systems as well.

while he was disabled and the amount of total temporary disability indemnity applicant was entitled to under California's workers' compensation laws.[2]

On November 30, 1992, the WCJ made findings on the issue of the credit, denying the credit to Pacific Bell. In her opinion on decision, the WCJ noted that the employer based its claim for entitlement to credit on section 6, paragraph 6 of the Plan. That section provides: "Payments Under Law. In case any benefit, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of a Participating Company, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under this Plan; provided, however, that no benefit payable under this Plan shall be reduced by reason of any governmental benefit payable on account of military service or by reason of any benefit which the recipient would be entitled to receive under the Social Security Act. In those cases, where, because of differences in the time or methods of payment, or otherwise, whether there is such excess or not is not ascertainable by mere comparison but adjustments are necessary, the Committee in its discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to carry out in a fair and equitable manner the spirit of the provision for the payment of such excess."

The WCJ relied on the holding in *Ott* v. *Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 912 [173 Cal.Rptr. 648], the most recent California appellate decision concerning credit in such cases. The employer seeking credit in the *Ott* case was Pacific Telephone, Pacific Bell's corporate predecessor, and the *Ott* plan and the present Plan are substantially the same. In *Ott*, the Court of Appeal held that the plan was not entitled to credit against liability for workers' compensation benefits because no evidence had been offered by the employer that the private benefits available to the injured employee were the "functional equivalent" of California workers' compensation or were of "the same general character" as workers' compensation benefits. (118 Cal.App.3d at p. 920.)

In the present case, the WCJ acknowledged that Pacific Bell's plan committee had passed a resolution on August 5, 1987, declaring that payments made to employees either voluntarily or on account of the awards of the Board for all species of workers' compensation benefits were of "the

---

[2]There is a disparity in the figures in the record. The WCJ has described the difference as $10,784.40, but also sets forth $10,822.40, explaining that Pacific Bell claims that amount.

same general character" as payments under the Plan.[3] Pacific Bell sent a letter to Appleby on June 26, 1990, shortly after his injury, clearly advising him that Pacific Bell intended to recover Plan benefits paid to him from workers' compensation benefits.[4]

The WCJ stated that while Labor Code section 4909 permitted an employer credit for voluntary payments to an injured employee, it did not apply to involuntary payments, and that the Plan payments in this instance, secured as the result of collective bargaining, were not voluntary in nature. Further, it was noted that Pacific Bell had withheld taxes from the Plan benefits paid to applicant Appleby, and that this was further evidence that Pacific Bell did not intend the Plan benefits to serve as permanent disability advances, since permanent disability indemnity is not taxable. Finally, the WCJ pointed out that since Pacific Bell seeks credit through the workers' compensation system for payments made to workers injured on the job but not to certain workers injured in other (nonindustrial) ways, Pacific Bell's policy violates Labor Code section 132a, which prohibits discrimination (i.e., disparate treatment) against industrially injured workers.

---

[3]The committee's resolution, in pertinent part, stated: "Resolved: That pursuant to . . . the Pacific Telesis Group Pension Plan['s] . . . payments made or due to employees . . . either voluntarily or on account of awards of the Workers' Compensation Appeals Board for temporary partial disability, temporary total disability, permanent partial disability, permanent total disability, vocational rehabilitation temporary disability, medical treatment, death benefits and/or other workers' compensation benefits due to an industrially related disability or death, are of the same general character as payments made or due under the Plans on account of the same injury, disability or death including, but not limited to, sickness and accident disability benefits, death benefits, partial disability benefits, disability pensions and medical expense benefits. . . ."

[4]The letter states: "This letter is in regard to your claim of an on-the-job injury of 04-18-90. As a result of your claim, you may begin to receive benefits pursuant to the Pacific Telesis Group Sickness [and] Accident Disability Benefit Plan. . . . [¶] The purpose of this letter is to make clear to you that under no circumstances will you receive duplicate payments. The Company will be taking credit against any obligation it may have under Workers' Compensation laws on account of the same injury for all amounts paid under any of the Company's benefit plans. In those cases where the Company makes payments to you pursuant to Workers' Compensation Law, those payments will reduce, or be offset against, any benefits you are due under any of the Company's benefit plans. [¶] The basis for this practice can be found in . . . [the Plan] . . . . Pursuant to these provisions, the General Employees' Benefit Committee has determined that any benefits paid pursuant to those plans are of the same general character as Workers' Compensation benefits under the law. [¶] You should be advised that there may be periods where the plan benefits paid to you exceed the rate at which the Company is obligated to pay you under Workers' Compensation Law. In those circumstances, the Company will be taking credit not only for those benefits paid up to the Workers' Compensation rate, but will also take credit for the excess amounts paid above that rate. These excess amounts should be viewed as an advance payment to be applied against any future Workers' Compensation obligation on account of the same injury, whenever that obligation may arise."

Pacific Bell petitioned for reconsideration, raising the issue of federal preemption for the first time. The defendant employer contended that the federal Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. (ERISA), preempted any state effort to interfere with the provisions of Pacific Bell's Plan, even when those provisions raised the possibility of violation of California Labor Code section 132a. In her report and recommendation on reconsideration, the WCJ asked the Board to return the case to the trial level for a finding on the ERISA issue, pointing out that (1) the credit could and should not be taken against applicant's permanent disability indemnity because of the distinct character of permanent disability indemnity as defined by California law; (2) the fact that taxes were removed before the benefits were paid negated Pacific Bell's intent to seek credit; and (3) Pacific Bell did not make the ERISA argument at the trial level.

On February 22, 1993, the Board granted reconsideration but did not return the case to the trial level. The Board overruled the WCJ on nonfederal grounds, thereby permitting Pacific Bell to take the credit to which it claimed entitlement.

In response to the contention that applicant never intended that the wage continuation payments would reduce his permanent disability indemnity, the Board referred to the letter that Pacific Bell had sent to applicant Appleby on June 26, 1990, shortly after his injury, clearly advising him that Pacific Bell intended to recoup Plan benefits paid to him from workers' compensation benefits. (See fn. 4, *ante*.) The Board concluded that applicant Appleby, by accepting benefits from the Plan after receipt of the letter, had thereby waived his right to object to the credit.

The Board explained that in *Ott*, the Court of Appeal had rejected credit because there was no evidence that Pacific Telephone's plan benefits were of "the same general character" as workers' compensation benefits, but that the committee resolution involved in this case, declaring that the benefits *were* of "the same general character," was sufficient to meet the "requirement" of *Ott* and entitled Pacific Bell to the credit whether applicant Appleby had agreed to the procedure or not.

The Board also determined that Pacific Bell was not required to make a further showing of compliance with Labor Code section 4909 by showing that its Plan payments were voluntary, because Pacific Bell's committee resolution was sufficient to meet *Ott*'s "alternative requirements," of either showing that the benefits were similar *or* voluntary. It also found that where the credit was sought "unambiguously," it mattered not that it would be paid from an injured employee's permanent disability indemnity award.

The Board declared it could not determine the taxable status of Plan benefits, and declined to discuss either ERISA or Labor Code section 132a, because neither had been raised at the trial level. The Board concluded that permitting the credit would not violate Labor Code section 3751 (which precludes employee contributions to the workers' compensation system from their own earnings) because Plan benefits were not earnings. The Board expressed concern that applicant would obtain double recovery unless the credit was allowed.

Applicant filed a timely, verified petition for writ of review, asking this court to grant extraordinary relief and publish a discussion of the credit issue because of widespread interest and the fact that there continue to be divergent rulings among the workers' compensation referees on whether credit should be permitted. We issued the writ of review.

DISCUSSION

A. *Labor Code section 4909*

Labor Code section 4909 provides: "Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, or by his dependents in the event of his death, which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit may be taken into account by the appeals board in fixing the amount of the compensation to be paid. The acceptance of any such payment, allowance, or benefit shall not operate as a waiver of any right or claim which the employee or his dependents has against the employer."

Pacific Bell relies on Labor Code section 4909 to obtain credit in this case. The statute was enacted in 1937, long before business entities seriously attempted "integration" of their private benefit plans for employees with state pension, disability or workers' compensation systems, and also before it became commonplace for employees of large corporations to be represented by labor unions in negotiating the terms of their employment.

Labor Code section 4909, as interpreted by the California courts, was intended to encourage employers to make *voluntary* payments to injured employees and obtain a subsequent reduction in the amount determined to be due the employee. In *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 258 [78 Cal.Rptr. 497, 455 P.2d 425], the California Supreme

Court held that this statute empowered the Board to exercise discretion in allowing or disallowing credit to an employer who had continued to pay wages to Herrera, an injured employee. In *Herrera*, the credit was allowed against an award of temporary disability indemnity, *to preclude double recovery* to the employee.

There has been an additional distinction concerning "voluntariness" made in interpreting Labor Code section 4909. In *Reiman* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 732 [136 Cal.Rptr. 218], the Court of Appeal held that a payment made by an employer without expectation of repayment or credit was a *true gift* by an employer to an injured employee for which the employer was *not* entitled to a credit pursuant to this section.

In 1981, in *Ott* v. *Workers' Comp. Appeals Bd.*, *supra*, the Court of Appeal considered whether payments made pursuant to Pacific Telephone's plan for employees' pensions, disability benefits and death benefits entitled the employer to a subsequent credit against an injured employee's workers' compensation award. The plan in *Ott* had language virtually identical to the Plan language here. It provided, in pertinent part, that " 'In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company . . . the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan . . . .' " (*Ott* v. *Workers' Comp. Appeals Bd.*, *supra*, 118 Cal.App.3d at pp. 915-916, italics omitted.)

The *Ott* court held that an employer was entitled to credit against its workers' compensation liability for any wages or irregular payments in excess of compensation liability if the payments were "clearly intended by both employer and employee as an advance on compensation to become due." (*Ott* v. *Workers' Comp. Appeals Bd.*, *supra*, 118 Cal.App.3d at p. 920.) The court then stated that principle applied to disbursements from Pacific Telephone's plan because the plan stated that disability benefits included compensation liability payments. (*Ibid.*) However, because the plan required a determination that the plan benefit was "of the same general character" as permanent disability indemnity before the two benefits could be integrated, and there was no showing that Pacific Telephone's committee had made such a determination, the court concluded that Pacific Telephone was not entitled to credit against permanent disability indemnity. (*Ibid.*) ▇ In contrast, it was established in the present case that Pacific Bell's committee had passed the resolution concerning "similarities." In the present case, the resolution passed by Pacific Bell's committee did contain language determining that the Plan benefits were intended to be of the same general

character and the "functional equivalent" of benefits provided by California's workers' compensation system. The resolution obligated the Plan to pay or provide all benefits contemplated by workers' compensation law, whether specifically detailed in the Plan or not. This language satisfies a holding of *Ott* because it obligates Pacific Bell to pay if the injury is covered by workers' compensation. Thus, under *Ott*, Pacific Bell is entitled to a credit for the excess payment.

The *Ott* court also addressed the problem of whether Pacific Telephone's benefit payments were "voluntary," declaring that if they were, Pacific Telephone would be entitled to the credit by "operation of law." It concluded that if the plan had in fact been the subject of negotiations with the employees' union, payments under the plan would be involuntary, thus precluding credit. (*Ott* v. *Workers' Comp. Appeals Bd.*, *supra*, 118 Cal.App.3d at p. 921.) We disagree with *Ott* on this point. In our view, payments made under the compulsion of law are involuntary. Payments required by terms of a contract freely negotiated and voluntarily entered into are "voluntary" payments. (Cf. *City etc. of San Francisco* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 1001, 1010 [88 Cal.Rptr. 371, 472 P.2d 459].) In *City of San Francisco*, the Supreme Court pointed out the distinction between "compulsory" workers' compensation benefits and "voluntary" pension plan benefits as follows: "Payments of workmen's compensation and of retirement benefits are based upon entirely different principles. The former is compulsory under state law; the latter is voluntary and is subject to contractual arrangement between the employer and employee." (*Ibid.*) In the present case, the WCJ concluded that the Plan was adopted as a result of negotiations between Pacific Bell and the employees' union representative, the Communications Workers of America, and, in reliance on *Ott*, erroneously concluded that payments pursuant to the Plan were not voluntary. Since we conclude that payments under the Plan were voluntary, the Board was free to exercise the discretion vested in it by Labor Code section 4909.

### B. *Conflict With California Law*

There are a number of other issues raised by the Board's allowance of credit to Pacific Bell which require discussion. The workers' compensation judges, now referees, who have denied credit to Pacific Bell or to other business entities for payments pursuant to similar plans, have done so because they have perceived that provisions of these corporate benefit plans conflict with either the decisional law in California or the California Labor Code. Applicant's petition in this court describes Pacific Bell's Plan as basically a wage continuation arrangement and points out some of the conflicts with California law; respondent Pacific Bell counters that the most

important benefit conferred by the Plan on injured workers such as applicant is the receipt of more income than would otherwise have been payable at the time it would be most needed.

### 1. *Permanent Disability Indemnity*

The distinction between compensation for wage loss and permanent impairment is well established. In *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 294 [285 Cal.Rptr. 86, 814 P.2d 1328], the California Supreme Court reiterated in another context the fundamental distinctions, under the California workers' compensation system, of benefits compensating for wage loss, providing medical treatment, and compensating for bodily impairment. Permanent disability indemnity is awarded injured workers in California in lieu of tort damages against employers.

The resolution adopted by the Pacific Bell Plan established the Plan will make payments to an employee who suffers an industrial injury, whether such payment is made for "temporary partial disability, temporary total disability, vocational rehabilitation, temporary disability, medical treatment, death benefits and/or other workers' compensation benefits . . . ." The Plan further provides that Pacific Bell is entitled to a credit to the extent the payments made by the Plan exceed those to which the employee is entitled under workers' compensation.

 To interpret the Plan and the applicable statutes otherwise would permit the employee to obtain a double recovery, contrary to *Herrera v. Workmen's Comp. App. Bd., supra,* 71 Cal.2d at page 259, where the court said: "If, after having received full wages during the period of his disability, petitioner were permitted to recover, in addition, the amount of the disability payments to which he was entitled, he would be given double payment for a single injury. Under such circumstances, an incapacitated employee performing no services would receive a larger payment than one rendering services. To interpret the statute as permitting such double recovery would not be reasonable. [Citation.] Rather, as stated in *State Comp. Ins. Fund v. Industrial Acc. Com.,* 43 Cal.App.2d 233, 235 [2] [110 P.2d 510], 'under the workmen's compensation laws an injured employee should not receive, in an ordinary case, greater compensation than his wages would have been had he not been injured.' " (Fn. omitted.)

### 2. *Employee Contributions*

 The Board's decision addressed the issue of whether or not Labor Code section 3751, subdivision (a), is violated by the credit, and concluded it

had not been violated. Labor Code section 3751, subdivision (a) prohibits employers from obtaining contribution toward workers' compensation benefits from employees.[5]

The Board correctly relied on the holding in *Anderson* v. *Union Oil Co.* (1975) 49 Cal.App.3d 968 [123 Cal.Rptr. 191], which rejected a challenge to Union Oil's private benefit plan for employees contained in an agreement between Union Oil and the employee's labor union as violative of Labor Code section 3751. The *Anderson* court noted that the benefits from the private plan, which were paid to injured employees to supplement workers' compensation benefits, were not funded either directly or indirectly by employees, but were funded by Union Oil alone. Here, benefits paid under the Plan are paid entirely by Pacific Bell, with no contribution or payment of any kind from employees or other sources. Therefore, as in *Anderson*, we conclude that permitting the employer to use the Plan to obtain credit against workers' compensation liability does not violate the prohibition of this section.

### 3. *Labor Code Section 132a*

The Board declined to discuss whether the Plan discriminated in its treatment of industrially injured workers as opposed to employees injured in other ways, and if so, if that discrimination constituted a violation of Labor Code section 132a. Applicant did not file a petition pursuant to Labor Code section 132a. Therefore we, like the Board, decline to consider the issue.

### 4. *Taxation*

■ Permanent disability payments are not taxable under either federal or state law. The fact that the Plan initially withholds federal and state taxes from its payments to industrially injured workers was viewed by the WCJ as evidence that the Plan's designers never intended that Plan payments be regarded as permanent disability indemnity advances. It appears that the withholding was merely an accounting procedure and that ultimately applicant and other industrially injured workers are not taxed on permanent disability indemnity payments or any offset to the employer. The Board has correctly responded here that it was not in a position to make determinations regarding the taxability of Plan payments or credits.

---

[5]Subdivision (a) provides that "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this subdivision is a misdemeanor."

## C. *Federal Preemption*

On reconsideration, Pacific Bell argued that ERISA preempted any challenge to its Plan based on violations of California law. Section 1144(a) of title 29 of the United States Code provides, with some exceptions that have no application here, that ERISA preempts all state laws that relate to employee benefit plans to which ERISA applies. Pacific Bell's Plan has been described as an ERISA employee benefit plan because the Plan is maintained by an "employer engaged in commerce or in any industry or activity affecting commerce . . . ." (29 U.S.C. § 1003(a)(1); see *Pacific Bell* v. *Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1603, 1610 [231 Cal.Rptr. 484].)[6]

The Board declined in this case to deal with the issue of federal preemption raised by Pacific Bell on reconsideration, declaring that the issue had not been litigated at the trial level. It also declined, however, to send the case back so that the issue could be considered by the WCJ, the Board, and preserved for appellate review. Instead, it chose to deal with the issues presented to it on state grounds, without considering federal preemption. Since we conclude that California law does not adversely impact on the Plan and affirm the order of the Board on state law grounds, it is not necessary to consider the question of whether ERISA preempts challenges to the Plan based on state law.

### DISPOSITION

Respondent Workers' Compensation Appeals Board's February 22, 1993, order awarding Pacific Bell credit is affirmed.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 13, 1994. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the application should be granted.

---

[6]ERISA provides that state and federal courts have concurrent jurisdiction of civil actions by a participant in or beneficiary of an ERISA plan to clarify his or her rights to future benefits under the terms of the plan. (29 U.S.C. § 1132(a)(1)(B); see *Intern. Ass'n of Bridge, etc.* v. *Douglas* (7th Cir. 1981) 646 F.2d 1211, 1214.)