### Bruce E. BOUFORD

v.

### BATH IRON WORKS CORP., et al.

Supreme Judicial Court of Maine.

Argued June 6, 1986.

Decided Aug. 27, 1986.

Donald F. Fontaine (orally), Portland, for plaintiff.

Norman & Hanson, John H. King, Jr., Stephen Hessert (orally), Theodore H. Kirschner, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ., and VIOLETTE, A.R.J.*

SCOLNIK, Justice.

Bath Iron Works Corporation (BIW) and the Commercial Union Insurance Company appeal from a decision of the Appellate Division of the Workers' Compensation Commission affirming the commissioner's decision ordering, *inter alia,* BIW to pay Bruce Bouford benefits for fifty percent permanent impairment for loss of use of his back. BIW contends that the commissioner erred in ruling that it was not entitled to credit against the permanent impairment award federal compensation benefits paid to Bouford. We affirm the decision.

The facts are undisputed. Bouford sustained an injury to his lower back and legs arising out of and in the course of his employment by BIW on August 16, 1978. As a result of that injury, Bouford received benefits voluntarily under the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1986). Specifically, he received benefits for temporary total disability from August 18, 1978 to February 4, 1980, and for permanent partial disability thereafter. Because BIW hired Bouford after he had suffered a back-related injury in 1975, its liability for Bouford's second job-related injury was limited to two years. As a result, after February 4, 1982, Bouford's permanent partial disability benefits have been paid out of a special fund established pursuant to 33 U.S.C. §§ 908(f), 944.

---

* VIOLETTE, A.R.J., sat at oral argument as Associate Justice, but retired prior to the preparation of this opinion. He has joined in the opinion as an Active Retired Justice.

On January 30, 1984, based on the 1978 injury, Bouford filed two petitions under Maine's Workers' Compensation Act (WCA), 39 M.R.S.A. §§ 1–195 (1980 & Supp.1985–1986), one for an award of compensation, the other for a determination of the extent of permanent impairment. The commissioner granted both petitions. He found Bouford to have been totally incapacitated from August 18, 1978, to March 19, 1979, and twenty-five percent partially incapacitated for an open-ended period beginning March 19, 1979. BIW was further ordered to pay Bouford fifty percent permanent impairment for the loss of the use of his back, a lump sum in the amount of $16,053. Since Bouford had received benefits under the LHWCA for the 1978 injury, the commissioner allowed BIW to credit the federal compensation benefits paid during the specified periods against the Maine compensation awards. However, he did not extend this offset to the permanent impairment award because the LHWCA did not contain a similar provision compensating Bouford for the loss of the use of his back. After the Appellate Division affirmed the commissioner's decision, we granted BIW's petition for review.

■ The LHWCA is a federal workers' compensation statute designed in part to provide compensation for injuries sustained by persons engaged in maritime employment. *See* 33 U.S.C. § 902(3). The Act, however, does not prevent a state from applying its workers' compensation scheme to land-based injuries that are also covered by the LHWCA. In *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), the United States Supreme Court declared that concurrent jurisdiction for federal and state compensation acts was consistent with ensuring that any award a marine worker receives meets the minimum benefits under the LHWCA regardless of whether he was injured on land or over water. The Court stated:

> [I]f state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for workers' injuries than under an exclusively federal compensation system. But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and *superior* state benefits.

*Id.* at 724, 100 S.Ct. at 2438 (emphasis in original) (footnote omitted). To be sure, under concurrent jurisdiction, an employee is prevented from receiving a double recovery of compensation benefits. *Id.* at 725 n. 8, 100 S.Ct. at 2439 n. 8. *See also Stockford v. Bath Iron Works Corp.,* 482 A.2d 843, 845 (Me.1984). BIW argues that any award under the Maine Act necessarily constitutes a double recovery if it is paid for the same injury. We disagree. An examination of the LHWCA and Maine's Act makes clear that the permanent impairment benefits awarded to Bouford in this case are separate and distinct from the benefits he received under the LHWCA.

■ Bouford received benefits for permanent partial disability as a result of his 1978 injury under the LHWCA. 33 U.S.C. § 908(c). BIW contends that this award is the equivalent of an award for permanent impairment under WCA and therefore it should be entitled to a credit. This contention is without merit. Subsection c of section 908 provides:

> In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subsection (b) or subsection (e) of this section. . . .

33 U.S.C. § 908(c).[1]

Subsection (c) includes a schedule for twenty different specific injuries, primarily loss

---

1. In addition to an award for permanent partial disability, the LHWCA provides for awards for permanent total, temporary total, and tempo-rary partial disability. The remedies for permanent and temporary total disability are essentially two-thirds of the employee's average week-

of body members. An employee who suffers an injury listed on the schedule is entitled to a fixed award regardless of the injury's effect on his earning capacity. *See* 33 U.S.C. § 908(c)(1)–(20). An additional subparagraph, 33 U.S.C. § 908(c)(21), applies to all injuries not scheduled. Because a back injury is not scheduled, Bouford's permanent partial disability benefits were paid pursuant to subparagraph (21), which provides:

> Other cases: In all other cases in the class of disability, the compensation shall be 66⅔ per centum of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability.

Unlike the scheduled provisions, permanent partial disability payments under subparagraph 21 are designed to compensate an employee for his economic loss owing to his injury. Benefits are based on actual loss of earning capacity, and are measured by the actual impairment of the employee's wage-earning capacity caused by his injury. As the Court explained in *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 282–83, 101 S.Ct. 509, 516–17, 66 L.Ed.2d 446 (1980):

> Unless an injury results in a scheduled disability, the employee's compensation is dependent upon proving a loss of wage-earning capacity; in contrast, even though a scheduled injury may have no actual effect on an employee's capacity to perform a particular job or to maintain a prior level of income, compensation in the schedule amount must be paid.

Maine's Act is similar to the LHWCA in that it identifies several categories of disability and separately prescribes a method of compensation for each. It provides compensation for total incapacity, 39 M.R.S.A. § 54; partial incapacity, 39 M.R.S.A. § 55; and permanent impairment, 39 M.R.S.A. §§ 56, 56–A. Section 56, like 33 U.S.C. § 908(c)(1–20), contains a schedule of specific injuries, primarily loss of body members or other incurable conditions, for which a specific amount of compensation is paid to an employee. These payments are also made regardless of loss of earning capacity. For injuries not scheduled, such as Bouford's 1978 back injury, section 56–A provides:

> In addition to the benefits provided for in sections 54 and 55, when an employee sustains an injury which is included in the following schedule, the incapacity in each case *shall be deemed to be total for the period specified and the injured employee shall receive a lump sum payment for said injury*, which shall be determined by multiplying the amount to which he would be entitled weekly for total incapacity as determined under section 54 by the period of presumed total incapacity set forth in this section. The specific periods of presumed total incapacity because of injuries specified in this section shall be as follows:
> Total loss of function of
>
> .    .    .    .    .
>
> Back: 200 weeks
>
> .    .    .    .    .

3a M.R.S.A. § 56–A (emphasis added).[2]

Unlike the permanent partial disability benefits Bouford received under the LHWCA intended to compensate him for his loss of earning capacity, permanent impairment benefits awarded pursuant to section 56–A are based exclusively on loss of function of a bodily part. *See, e.g., Campbell v. Bates Fabrics, Inc.*, 422 A.2d 1014,

ly wages. *See* 33 U.S.C. § 908(a), (b). The remedy for temporary partial disability is two-thirds of the difference between the employee's pre-injury average weekly wages and his post injury wage-earning capacity during the period of his disability, up to a maximum of five years. 33 U.S.C.A. § 908(e). *See generally Potomac*

*Elec. Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).

2. This version of section 56–A was repealed and replaced by P.L.1985, ch. 372, § A, 21 (effective June 30, 1985).

1015 (Me.1980) (permanent impairment benefits "are not dependent upon wage loss but are paid even though the employee may have sustained no actual diminution of wages"). The state remedy has no relationship to loss of earning capacity. " 'Impairment benefits are justified because of losses an impaired worker experiences that are unrelated to lost remuneration. The impairment may, for example, have lifetime effects on the personality and normal activities of the worker.' " *Id.* at 1016 (quoting Report of the National Commission on State Workmen's Compensation Laws 69 (1972)). Since the permanent impairment award in this case provides compensation for the physical consequences of a work-related injury, it is not duplicative of a permanent partial disability awarded to Bouford under LHWCA. Instead, it is a superior benefit that is distinct from those available under the LHWCA. Accordingly, we find no basis to conclude that Bouford received a double recovery in this case. Absent an award under the LHWCA compensating Bouford for the permanent loss of function of his back, BIW is not entitled to an offset against the permanent impairment award.

■ We reject BIW's contention that public policy nevertheless requires that there be an offset in this case. We are mindful of the fact that Congress has amended the LHWCA to require that "amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law ... shall be credited against any liability imposed by this chapter." 33 U.S.C. § 903(e) (applicable to claims pending and filed after Sept. 28, 1984). That Congress requires that an employer be given credit for any payments made under a state act does not require that any payments made under the LHWCA be necessarily offset when benefits are paid under Maine's Act. Under concurrent jurisdiction, states are free to provide for more favorable benefits. When those superior benefits provide compensation that is separate and distinct from the compensation awarded under the federal act, we find no public policy supporting an offset. Since the permanent impairment award in this case is intended solely to compensate an injured employee for a physical loss of bodily function, it would defeat the purpose of that award if it were offset against benefits paid for loss of earning capacity. In short, public policy does not support BIW's contention that Bouford's permanent impairment award be offset against his award for permanent partial disability under the LHWCA. Accordingly, we affirm the commissioner's decision denying BIW the offset.

The entry is:

Decision of the Appellate Division of the Workers' Compensation Commission affirmed.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal. ·

NICHOLS, VIOLETTE, and GLASSMAN, JJ., concurring.

ROBERTS, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I must respectfully disagree with the Court because I believe the Court addresses incorrectly the issue before it. If the issue were limited to a question of state law as the Court's opinion implies, I would join that opinion. I agree that permanent impairment benefits awarded Bouford "are separate and distinct from the benefits he received under LHWCA." Slip Op. at 472. Notwithstanding any converse implication of section 62, there is no explicit statutory requirement in the Maine Workers' Compensation act that BIW receive credit for the LHWCA payments. Moreover, I do not suggest adding an equitable gloss to the Maine act by requiring such a credit as a matter of public policy. *Hird v. Bath Iron Works Corp.,* 512 A.2d 1035 (Me.1986); *Wentzell v. Timberlands, Inc.,* 412 A.2d

1213 (Me.1980). I conclude, therefore, that there is no basis in our state law to require a setoff.

In my view, however, the question is one of federal law and requires that we discern what the Supreme Court would decide on the issue before us.

As our Court observes, Slip Op. at 472, the Supreme Court has determined that state compensation schemes are not preempted by the LHWCA in areas of apparent concurrent jurisdiction. *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). Critical to that determination was the observation that the employer will receive credit on either scheme for any amounts paid under the other. *Id.* at 725 n. 8, 100 S.Ct. at 2439 n. 8. Our observation in *Stockford v. Bath Iron Works Corp.,* 482 A.2d 843, 845 (Me. 1984), that Stockford could not obtain a double recovery was not intended as a statement of Maine law. Rather, we noted the controlling principle of federal law announced in footnote 8 of *Sun Ship.*

Although it is true that the Supreme Court observed in *Sun Ship* that Congress was unconcerned about states providing superior benefits, the federal scheme plainly requires all payments under LHWCA to be credited toward those *superior* state benefits. The opinion in *Sun Ship* traced the development of concurrent jurisdiction through *Davis v. Department of Labor,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), and *Calbeck v. Travelers Insurance Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). Although not part of the dispute in *Calbeck,* the Supreme Court there noted that full credit was allowed in the federal proceedings for all payments made under the Louisiana Compensation Act regardless of their purpose. Footnote 8 in *Sun Ship* cites *Calbeck* as demonstrating that there is no danger of double recovery

because "employer's awards under one compensation scheme would be credited against any recovery under the second scheme." The Supreme Court's language in footnote 8, as well as the subsequent enactment of 33 U.S.C. § 903(c), would require any amount paid for permanent impairment under the Maine Workers' Compensation Act to be credited toward federal liability for the same injury. It is inconceivable that the application of the setoff principle is dependent upon the fortuity of whether the state or federal proceeding occurred first. I am convinced that the Supreme Court would require LHWCA payments to be credited against an award for permanent impairment as well as any other compensation awarded for the same injury.

Finally, I reject our Court's suggestion that the offset at issue would defeat the purpose of the award for permanent impairment. Slip Op. at 474. On the contrary, regardless where the employee first seeks an award of benefits he is entitled to the maximum amount allowed to an individual under either scheme. Today's decision, however, would permit the person whose injury fortuitously is within the area of concurrent jurisdiction to obtain greater benefits than either the person suffering a strictly land-based injury or the person suffering a strictly maritime injury. I would hold that as a matter of federal law BIW must be credited with all payments under LHWCA toward any benefits awarded under the Maine Workers' Compensation Act.