[No. S042327. Dec. 2, 1996.]

SEA-LAND SERVICE, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and CHRIS A.
LOPEZ, Respondents.

78

**COUNSEL**

Frank B. Hugg, Jeanne M. Bates and Wendy B. Moseley for Petitioners.

Littler, Mendelson, Fastiff, Tichy & Mathiason, Roy D. Axelrod, Margaret C. Bell and Samantha M. Paynter as Amici Curiae on behalf of Petitioners.

Boxer, Elkind & Gerson and Michael G. Gerson for Respondents.

William A. Herreras and Patrick O'Shaughnessy as Amici Curiae on behalf of Respondents.

## OPINION

BAXTER, J.—When a maritime employee suffers an industrial injury that falls within the concurrent jurisdiction of the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. § 901 et seq.) and the California Workers' Compensation Act (Lab. Code, § 3200 et seq.),[1] must the total amount of disability benefits paid to the employee under the LHWCA be credited against the total amount of disability benefits awarded under the California act, or may credit for LHWCA benefits be determined by comparing the amount paid or awarded in each specific category of benefits under each act?

We conclude that credit for LHWCA disability benefits must be calculated based upon a comparison of the total disability benefit payments and awards under each act, regardless of category. Accordingly, the contrary judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not disputed. Sea-Land Service, Inc. (Sea-Land) employed Chris A. Lopez (Lopez) as a maritime warehouse worker. On July 15, 1985, Lopez suffered an industrial injury to his shoulder while working for Sea-Land.

The parties stipulated that Lopez's injury fell within the concurrent jurisdiction of the California Workers' Compensation Act and the federal LHWCA. Sea-Land, permissibly self-insured, provided all medical care and paid temporary disability indemnity to Lopez under the LHWCA. These temporary disability payments totaled $25,457, which was $9,617 more than the $15,840 in temporary disability indemnity to which Lopez was entitled

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

under the California act.[2] After a formal hearing and order, a federal administrative law judge awarded unscheduled wage loss permanent disability benefits of $7,041 to Lopez under the LHWCA. Although Sea-Land paid the $7,041 in federal permanent disability benefits to Lopez, this award was later reversed on appeal.

Subsequently, the California Workers' Compensation Appeals Board (WCAB) awarded Lopez scheduled permanent partial disability indemnity of $9,020. Even though the maximum amount of temporary disability benefits available to Lopez under the LHWCA ($25,457) exceeded the total combined amount of temporary and permanent disability benefits available to him under the California act ($24,860), Lopez claimed that, in addition to the federal temporary disability benefits, he was entitled to state permanent disability benefits because no such benefits were allowed under the LHWCA.

In order to reconcile the state award and the prior federal disability payments, Lopez conceded before the WCAB that Sea-Land was entitled to a credit for all payments made under the LHWCA for benefits of the same category (category-by-category credit). In this regard, Lopez agreed that, because federal temporary disability benefits were higher than California would have allowed, he was not entitled to any additional temporary disability payments under state law. Also, Lopez agreed that Sea-Land was entitled to a credit against his state permanent disability indemnity award for the $7,041 in federal permanent disability payments Sea-Land made before the federal award was reversed. Lopez objected, however, to Sea-Land's petition for credit of its excess federal temporary disability payments of $9,617 against its remaining liability for $1,979 for state permanent disability benefits.[3]

A workers' compensation judge accepted Lopez's concessions that federal temporary disability should be credited against state temporary disability and that federal permanent disability should be credited against state permanent disability. The judge, however, denied Sea-Land's petition for credit of the

---

[2]Sea-Land's state liability was lower because state temporary disability benefits were capped at a lower weekly rate than the comparable federal benefits. All figures have been rounded to the nearest dollar.

[3]The decision of the federal administrative law judge who decided Lopez's claim for benefits under the LHWCA indicates that, even though Lopez was not entitled to the $7,041 in federal permanent disability payments made by Sea-Land, the LHWCA does not provide for recoupment of overpaid compensation, except as an offset against future compensation. Accordingly, in the WCAB proceedings, Sea-Land took the position that "[w]hen the LHWCA permanent disability payment of $7,040.88 is credited against the WCAB liability for permanent disability of $9,020.00, the remainder owed is $1,979.12."

excess federal temporary disability against state permanent disability and awarded $1,979 to Lopez. The WCAB denied reconsideration of the judge's determination, and the Court of Appeal summarily denied Sea-Land's petition for writ of review. After this court granted Sea-Land's petition for review and transferred the matter to the Court of Appeal with instructions to vacate the summary denial and grant the writ of review, the Court of Appeal concluded in a split decision that the WCAB properly granted category-by-category credit of Sea-Land's federal temporary and permanent disability payments. We granted Sea-Land's petition for review.

## II. Discussion

■ "A basic premise of compensation law is that there shall be but a single recovery of benefits on account of a single injury or disability; to permit a double recovery would be to place a double burden on industry and encourage malingering; the right to recovery of compensation from more than one source is subject to the rule that a credit shall be allowed against an award for any payment to the extent that it permits a double recovery." (*Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159].)

■ In this case, the parties agree on the general proposition that, when an injury falls within the concurrent jurisdiction of the LHWCA and the California Workers' Compensation Act, the injured worker may not obtain a "double recovery" of disability benefits. They also agree it is appropriate to credit benefit payments made by an employer pursuant to the LHWCA against an award for the same injury under the California act to prevent such double recovery.

Notwithstanding their evident accord on the above points, the parties are in sharp disagreement over what method of crediting must be applied to LHWCA disability payments where benefits are later sought under the California act. As indicated above, Sea-Land argues it should be given dollar-for-dollar or full economic credit of its excess federal temporary disability payments against its remaining liability for state permanent disability indemnity. (See fn. 3, *ante.*) As the former amount exceeds the latter in this case, Sea-Land reasons it should not have to pay additional amounts for state permanent disability indemnity. Conversely, Lopez argues that credit for payments under the LHWCA should be determined on a category-by-category basis rather than by comparing the total payments or awards made under each act. Lopez claims that since permanent disability benefits are not available under the LHWCA in his case, no credit is applicable under

the California act and, therefore, he is entitled to receive state permanent disability benefits in addition to the temporary disability benefits he received under the LHWCA.

The difference in the two crediting systems essentially boils down to this: Under the category-by-category credit system advanced by Lopez, an employee's final recovery of state and federal disability benefits for an injury could exceed that available under either the LHWCA or the California act alone. Under the dollar-for-dollar credit system supported by Sea-Land, an injured employee's final recovery would be limited to the higher available recovery under one act or the other. Mindful of this difference, we begin our analysis.

■ The LHWCA "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." (*Howlett* v. *Birkdale Shipping Co.* (1994) 512 U.S. 92, 96 [129 L.Ed.2d 78, 86, 114 S.Ct. 2057, 2062].) Jurisdiction under the LHWCA is not exclusive, however. Amendments made to the LHWCA in 1972 have been interpreted as allowing states to apply their own workers' compensation schemes to land-based injuries that fall within the coverage of the federal act. (*Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715 [65 L.Ed.2d 458, 100 S.Ct. 2432] (hereafter *Sun Ship*).)

■ The United States Supreme Court has twice addressed the issues of double recovery and crediting in the context of LHWCA awards. In *Calbeck* v. *Travelers Insurance Co.* (1962) 370 U.S. 114 [8 L.Ed.2d 368, 82 S.Ct. 1196] (hereafter *Calbeck*), the high court affirmed two awards ordering benefits under the LHWCA, holding that an injured employee's previous acceptance of state disability benefits did not constitute an election of remedies so as to preclude a subsequent claim for benefits under the LHWCA. In so holding, the court observed: "in the order [to pay compensation under the LHWCA] *the full amount of all payments* made by the employer [under the state act] was credited against the [LHWCA] award, and no impermissible double recovery is possible." (*Calbeck, supra*, 370 U.S. at p. 131 [8 L.Ed.2d at p. 379], italics added.) Subsequently, in *Sun Ship, supra*, 447 U.S. 715, the high court relied upon *Calbeck, supra*, in concluding that a system of concurrent federal-state workers' compensation jurisdiction does not threaten double recovery since awards under one compensation system are credited against any recovery under the second system. (*Sun Ship, supra*, 447 U.S. at p. 725, fn. 8 [65 L.Ed.2d at p. 466].)

In the proceedings below, a majority of the Court of Appeal determined that *Calbeck* and *Sun Ship* were unhelpful in answering the crediting question posed here for two reasons: (1) both decisions concerned employees

who initially applied for state benefits; and (2) their references to impermissible "double recovery" were dicta because the issue of double recovery was not before the court in either case.

While we agree that the two decisions are not dispositive because they addressed situations where workers sought state compensation first, we find that *Sun Ship* points to an appropriate resolution of the matter. In *Sun Ship*, the issue was "whether a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the [LHWCA], as amended in 1972." (447 U.S. at p. 716 [65 L.Ed.2d at p. 460].) Prior to the 1972 amendments, decisions of the high court had effectively established a regime of concurrent federal-state jurisdiction over such injuries in light of the unfortunate circumstance that "the boundary at which state [workers' compensation] remedies gave way to federal [LHWCA] remedies was far from obvious in individual cases." (*Id.* at p. 718 [65 L.Ed.2d at p. 461].) Such a regime had been necessary to rescue maritime workers from the "jurisdictional dilemma" that had resulted when employees were forced to claim relief under one of two exclusive compensation schemes. (*Id.* at p. 720 [65 L.Ed.2d at p. 463] ; see also *id.* at p. 718 [65 L.Ed.2d at p. 461] ["the price of error was unnecessary expense and possible foreclosure from the proper forum by statute of limitations"].) Reasoning that amendments made to the LHWCA in 1972 could not fairly be understood as "resurrecting the jurisdictional monstrosity" that previously existed under the rule of exclusive jurisdiction (*id.* at p. 720 [65 L.Ed.2d at p. 463]), the high court determined that state workers' compensation schemes remained applicable to land-based injuries falling within the LHWCA's sphere of coverage. In affirming the rule of concurrent jurisdiction, the court assumed "there is no danger of double recovery . . . since employers' awards under one compensation scheme would be credited against *any* recovery under the second scheme." (*Id.* at p. 725, fn. 8 [65 L.Ed.2d at p. 466], italics added.) Significantly, the United States Supreme Court did not premise this assumption on whether the state or the federal award occurred first. Thus, were we to deny full economic credit in this case, we would seriously undermine one of the express assumptions underlying the *Sun Ship* decision.

In addition to the above case law, the LHWCA itself contains a specific crediting provision to eliminate the threat of double recovery for injuries falling within the zone of concurrent jurisdiction. That provision, which was added by Congress in 1984, reads in pertinent part: "Notwithstanding any other provision of law, *any amounts* paid to an employee *for the same injury, disability, or death* for which benefits are claimed under this Act pursuant to any other workers' compensation law . . . *shall be credited against any*

*liability* imposed by this Act." (33 U.S.C. § 903(e), italics added.) Decisions construing the statute hold it entitles an employer to full economic credit for all state workers' compensation payments arising out of the same injury, regardless whether such payments were made for different categories of benefits. (*D'Errico* v. *General Dynamics Corp.* (1st Cir. 1993) 996 F.2d 503, 505 [because the LHWCA lists "injury, disability, or death" in the disjunctive, employer's liability under the statute for wages lost due to temporary and permanent "total disability" must be offset by its previous payments under the state act for "permanent loss" and "permanent disfigurement"]; *Garcia* v. *National Steel & Shipbuilding Co.* (1988) 21 Ben. Rev. Bd. Serv. 314, 317) [because statute is written in the disjunctive, employer was entitled to a credit for the entire amount of benefits paid to claimant under the California act for each injury for which benefits were sought under the LHWCA, regardless of the type of disability involved].)

Like *Sun Ship* and *Calbeck*, the federal economic credit provision is not controlling because it addresses the situation where a worker applies for state compensation first and then seeks benefits under the LHWCA. Nonetheless, the existence of this statute weighs against adoption of an alternative credit system in California. As this very case illustrates, application of category-by-category credit would effectively require Sea-Land to pay more in compensation than if the WCAB award had come first. Unless reciprocal application of dollar-for-dollar credit is adopted, the measure of an employer's final liability for workers' compensation will invariably hinge upon the fortuity of which jurisdiction entered an award first.

Having concluded that federal law strongly supports application of full economic credit for LHWCA benefit payments, we now consider whether or not state law favors such a result.

■ Pursuant to state constitutional mandate, the California Workers' Compensation Act provides for a compulsory scheme of employer liability without fault for injuries arising out of and in the course of employment. (Cal. Const., art. XIV, § 4.) The purpose of the act is to furnish " 'a complete system of [workers'] compensation, including full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury.' " (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233 [60 P.2d 276].) Like the LHWCA, the California act is available to longshore workers and their families and provides extensive remedies such as compensation for temporary disability, medical care, and permanent disability.

■ In reviewing the California Workers' Compensation Act, we find no statute explicitly providing that payments made under the LHWCA be given

any sort of credit against a WCAB award. Section 4909, however, contains a crediting provision stating in relevant part: "Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, . . . which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, in the absence of any agreement, be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit may be taken into account by the appeals board in fixing the amount of the compensation to be paid. . . ."

In the proceedings below, the Court of Appeal unanimously rejected Sea-Land's claim that section 4909 entitles it to a dollar-for-dollar credit for payments made under the LHWCA. We reject the claim as well. The purpose of the statute is to encourage prompt voluntary payment of benefits and to protect employers that mistakenly make payments for a nonindustrial condition. (*Appleby* v. *Workers' Comp. Appeals Bd.* (1994) 27 Cal.App.4th 184, 191 [32 Cal.Rptr.2d 375].) Section 4909 provides for a credit in two situations. First, credit will be given where wages or other payments in excess of compensation liability are paid, and such payments are clearly intended by the employer and the employee as an advance on compensation to become due. (*Ott* v. *Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 912, 920 [173 Cal.Rptr. 648].) Second, in the absence of an agreement, the WCAB has discretion to allow credit where the employer voluntarily made payments described in the statute. (*Id.* at p. 921.)

Here, as the Court of Appeal observed, there is no indication the payments to Lopez were intended as an advance. Moreover, since federal temporary disability benefit payments are compelled by the LHWCA (33 U.S.C. § 908(b)), they cannot be characterized as voluntary. (See *Appleby* v. *Workers' Comp. Appeals Bd.*, *supra*, 27 Cal.App.4th at p. 193 [payments made under compulsion of law are involuntary].) Accordingly, section 4909 is inapplicable.

■ Although California's compensation act contains no specific crediting provision covering LHWCA benefit payments, two California cases have recognized a rule against double recovery in addressing jurisdictional issues involving the LHWCA. In *Duong* v. *Workers' Comp. Appeals Bd.* (1985) 169 Cal.App.3d 980 [215 Cal.Rptr. 609], the Court of Appeal determined that a shipyard worker who incurred injuries while engaged in activities covered by both the LHWCA and the California Workers' Compensation Act was entitled to seek benefits under each act simultaneously. In so holding, the court concluded: "Where concurrent jurisdiction allows

coverage under both the state and federal acts, there is no danger of double recovery because an employer's contributions under one will be credited against the other." (169 Cal.App.3d at p. 982, relying upon *Calbeck, supra,* 370 U.S. at p. 131 [8 L.Ed.2d at p. 379].)

In *Bobbitt* v. *Workers' Comp. Appeals Bd.* (1983) 143 Cal.App.3d 845 [192 Cal.Rptr. 267], the Court of Appeal was even more explicit on the issue of crediting. After concluding that an oil rig worker's injuries were subject to concurrent federal-state jurisdiction, the court determined that the worker's pending claim for benefits under the LHWCA did not preclude prosecution of his claim before the WCAB "since *any benefits* he might receive in the federal proceeding may be credited against benefits he might receive in the instant proceedings." (143 Cal.App.3d at p. 849, italics added.)

Though these decisions expressed a view that double recovery is impermissible and that full economic credit for LHWCA benefit payments is proper, a majority of the Court of Appeal below declined to follow them. Viewing the statements as dicta and lacking in precedential value, the majority instead approved the application of a category-by-category credit system.

To justify its position, the majority reasoned that category-by-category crediting is consistent with section 4661, which provides in pertinent part: "Where an injury causes both temporary and permanent disability, the injured employee is entitled to compensation for any permanent disability sustained by him *in addition to* any payment received by such injured employee for temporary disability." (Italics added.) The majority found it significant that temporary and permanent disabilities have different characteristics and that the indemnity for each meets different needs. In this regard, the majority quoted the following passage from *Maples* v. *Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827, 836-837 [168 Cal.Rptr. 884]: "It must be remembered that temporary disability indemnity and permanent disability indemnity were intended by the Legislature to serve entirely different functions. Temporary disability indemnity serves as wage replacement during the injured worker's healing period for the industrial injury. [Citation.] In contrast, permanent disability indemnity compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have [*sic*] been attained. [Citation.] Permanent disability serves to assist the injured worker in his adjustment in returning to the labor market. [Citation.] Thus, in many instances the allowance of credit for a temporary disability overpayment against permanent disability indemnity can be disruptive and in some instances totally destructive of the purpose of permanent disability indemnity. [Citations.]" Relying

upon this reasoning, and the fact that section 4661 entitles injured employees to both temporary and permanent disability indemnity, the majority concluded that temporary disability benefits under the LHWCA do not duplicate state permanent disability benefits so as to result in a prohibited double recovery. In his dissent, Justice Mosk concurs in this analysis.

While we have no quarrel with the stated distinction between temporary and permanent disability indemnity, we are not convinced section 4661 provides the answer to our crediting question. Section 4661 was last amended in 1949, long before *Calbeck, supra,* 370 U.S. 114, *Sun Ship, supra,* 447 U.S. 715, and the 1972 amendments to the LHWCA confirmed that certain maritime injuries were subject to concurrent federal-state jurisdiction. Prior to 1945, section 4661 expressly provided that where an injury caused both temporary and permanent disability, the injured worker was not entitled to state disability benefits that were available for both, but only to the greater of the two. (Stats. 1937, ch. 90, § 4661, p. 284.) By a series of amendments (Stats. 1945, ch. 1335, § 1, p. 2506; Stats. 1947, ch. 1132, § 1, p. 2572; Stats. 1949, ch. 107, § 1, p. 346), the Legislature liberalized section 4661 to provide that an injured employee is entitled to recover one comprehensive award comprised of both types of state disability benefits. Contrary to the assumptions of the majority in the Court of Appeal below and the dissent here, there is nothing in the history or context of section 4661 from which to infer a legislative intent to mandate a final recovery greater than that available under the state act by combining the most generous temporary and permanent disability benefits from separate federal and state awards without full crediting.[4]

█ We find it noteworthy that in an analogous context, courts in numerous jurisdictions, including California, have held that when two sister-state workers' compensation statutes apply to a single compensable injury, successive and supplementary awards are appropriate and do not threaten double recovery where the first award is fully deducted from the second. (See 4 Larson, The Law of Workmen's Compensation (1996) Successive Awards, §§ 85.00-85.70, p. 16-20 et seq., and cases cited at § 85.40, p. 16-29 et seq. (hereafter 4 Larson).)

[4]Citing to *Davis v. Department of Labor* (1942) 317 U.S. 249 [87 L.Ed. 246, 63 S.Ct. 225] (hereafter *Davis*), the dissent argues that "a regime of concurrent jurisdiction" over longshore compensation claims had existed by the time section 4661 appeared in its present form. Although *Davis* established such a regime in the sense that it acknowledged injuries within the "maritime but local" sphere might be compensated under *either* state *or* federal law (see *Sun Ship, supra,* 447 U.S. at p. 719 [65 L.Ed.2d at pp. 462-463]), *Davis* did not suggest the possibility of successive recovery of compensation under *both* systems of law. Accordingly, we remain unpersuaded that section 4661 was intended to address the issue of crediting in the context of successive state and federal awards.

In *Travelers Ins. Co.* v. *Industrial Acc. Com.* (1966) 240 Cal.App.2d 804 [50 Cal.Rptr. 114] (hereafter *Travelers Ins.*), an employee who had entered into a contract of employment in California sustained injury arising out of that employment in Alaska. After an insurance carrier paid the employee sums including temporary disability benefits of $9,271.42 and permanent disability benefits of $4,698 pursuant to Alaska's workers' compensation law, the employee received an award from the Industrial Accident Commission in California which included $6,520 in temporary disability benefits and $17,010 in permanent disability benefits. Noting that the insurance carrier's previous benefit payments had not been made pursuant to a formal award under Alaska law, the court nevertheless held it was proper, "in order to prevent a double recovery for the same injury, to allow a credit against the award made under the workmen's compensation law of California in a sum equal to the payments made on behalf of the insured under the workmen's compensation law of Alaska." (240 Cal.App.2d at p. 810; see also *Industrial etc. Exchange* v. *Ind. Acc. Com.* (1947) 80 Cal.App.2d 480, 486 [182 P.2d 309] [California employee was entitled to an award of California workers' compensation benefits for injuries received while working in Utah, but all amounts previously paid pursuant to Utah compensation law would be credited].) *Travelers Ins.*, *supra*, is consistent with the plurality opinion in *Thomas* v. *Washington Gas Light Co.* (1980) 448 U.S. 261, 281 [65 L.Ed.2d 757, 773, 100 S.Ct. 2647], which, in the context of holding that the full faith and credit clause (U.S. Const., art. IV, § 1) does not preclude successive sister-state workers' compensation awards,[5] recognized that a supplemental award does not threaten double recovery since it "allows full credit for payments pursuant to the earlier award."

The wisdom of requiring full dollar-for-dollar credit for successive compensation awards becomes clear when one considers the impact of such awards on employers and employees. As noted by Professor Larson, a renowned authority in the field of workers' compensation, there is a difference of opinion as to the desirability of allowing successive awards. On the one side, it has been argued that allowing successive awards may subject employers and insurance carriers to repeated claims in different jurisdictions and protracted litigation. On the other side, it has been pointed out that employees are typically at a disadvantage in learning of their potential rights under the various statutes of other states and may choose unwisely where to initially file a claim for benefits. "In any case," Professor Larson concludes,

---

[5]Strictly speaking, *Thomas* v. *Washington Gas Light Co.*, *supra*, did not involve successive *sister-state* awards, but rather an award under the Virginia workers' compensation act followed by a claim under the District of Columbia's workers' compensation act. (448 U.S. at p. 264, fn. 2 [65 L.Ed.2d at p. 762].)

"the worst that can happen to the [employers and insurance carriers], apart from the inconvenience mentioned above, is that they will have to pay *no more than the highest compensation allowed by any single state having an applicable statute*—which is the same amount that would always be payable if the claimant made the best-informed choice the first time." (4 Larson, *supra*, § 85.60, pp. 16-50 to 16-51, italics added.) Thus, as Professor Larson implicitly recognizes, public policy supports application of full dollar-for-dollar credit to successive sister-state workers' compensation awards as a matter of fairness to both employers and employees.

 In the context of successive LHWCA and state workers' compensation awards, concerns of fairness weigh even more heavily in favor of a full economic credit system. As indicated above, while federal law expressly requires that an employer be given dollar-for-dollar credit against an award under the LHWCA for any state disability payments (33 U.S.C. § 903(e)), there is no parallel statutory provision expressly requiring such a credit against a California compensation award for LHWCA disability payments. But if such payments are not fully credited against the benefits available under the California act, then an employer's right to offset state and federal compensation against each other will depend solely on which jurisdiction entered an award first. As a matter of fairness and predictability, the extent of both an employee's recovery and an employer's liability should not be determined by such a fortuity.

In opposing the dollar-for-dollar credit system, Lopez argues that adoption of such a system would be inconsistent with section 3202, which provides in relevant part that the California Workers' Compensation Act "shall be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." We disagree.

Giving full economic credit for LHWCA disability payments does not infringe upon California's interest in extending its own disability benefits to injured employees. Under such crediting, "[r]egardless of where an employee first seeks an award of benefits, he or she is entitled to the maximum amount allowed to an individual under *either* comprehensive legislative scheme." (*McGowan* v. *General Dynamics Corp.* (1988) 15 Conn.App. 615 [546 A.2d 893, 898], affd. (1989) 210 Conn. 580 [556 A.2d 587], italics added, fn. omitted.)[6] In other words, dollar-for-dollar crediting is fully compatible with the dictates of section 3202 because such crediting permits

---

[6]*McGowan* v. *General Dynamics Corp.*, *supra*, 546 A.2d 893, relied solely upon federal law grounds to hold that all amounts received under the LHWCA must be fully credited against

an injured maritime worker to obtain a final recovery of benefits that amounts, in any event, to no less than the maximum allowable recovery under the California system.

Finally, Lopez relies upon *Lustig* v. *U.S. Dept. of Labor* (9th Cir. 1989) 881 F.2d 593, *Landry* v. *Carlson Mooring Service* (5th Cir. 1981) 643 F.2d 1080, and *Dermont* v. *Transbay Container* (1994) 28 Ben. Rev. Bd. Serv. 403 to bolster the proposition that federal temporary disability benefits cannot be used to offset state permanent disability benefits. That reliance is misplaced.

In those cases, injured workers sought supplemental benefit awards under the LHWCA after having received benefits pursuant to claims made under various state workers' compensation acts. Although those decisions concluded that the employers were entitled to credit against the LHWCA awards *in the full amount of comparable benefits* paid under the state claims (33 U.S.C. § 903(e)), they held that the employers could not properly claim credit for attorney fees allocated to the injured workers' attorneys under state law (*Lustig* v. *U.S. Dept. of Labor, supra,* 881 F.2d at p. 596; *Landry* v. *Carlson Mooring Service, supra,* 643 F.2d at p. 1088), or for state penalties awarded to the worker due to the employer's failure to comply with the state compensation act (*Dermont* v. *Transbay Container, supra,* 28 Ben. Rev. Bd.) Serv. at p. 407). The rationale underlying those holdings is this: Because awards for attorney fees and penalties do not serve to compensate for the workers' injuries, such awards cannot be credited against the employers' liability for injury compensation under the LHWCA. (*Lustig* v. *U.S. Dept. of Labor, supra,* 881 F.2d at p. 596; *Landry* v. *Carlson Mooring Service, supra,* 643 F.2d at p. 1088; *Dermont* v. *Transbay Container, supra,* 28 Ben. Rev.) Bd. Serv. at p. 407.) Since, however, temporary disability indemnity and permanent disability indemnity both indisputably serve to compensate for the consequences of a worker's injuries, we find nothing inconsistent between the above authorities and Sea-Land's request for credit of its excess federal temporary disability payments against its liability for state permanent disability benefits. Indeed, more apposite federal authorities hold that an employer is entitled to full credit for all state benefit payments arising out of the same injury, even if such payments were made for different categories of benefits. (See *D'Errico* v. *General Dynamics Corp., supra,* 996 F.2d at p.

any award for which injured employees were eligible under the Connecticut Workers' Compensation Act, regardless of whether the state act provided certain classes of benefits unavailable under the LHWCA.

505; *Garcia* v. *National Steel & Shipbuilding Co., supra,* 21 Ben. Rev. Bd. Serv. at p. 317.)[7]

In sum, we do not accept Lopez's argument that where concurrent jurisdiction lies, an injured worker is entitled to the "best of both worlds" and may pick and choose the best disability benefits from each jurisdiction. As *Sun Ship, supra,* 447 U.S. 715, makes clear, the rule of concurrent jurisdiction was established to protect maritime workers against the harsh consequences of an exclusive jurisdiction system—under which a mistake in forum selection could result in no benefits at all. The availability of concurrent jurisdiction, however, does not alter the fact that the LHWCA and the California Workers' Compensation Act were each designed to provide a comprehensive scheme of compensation within their own spheres of jurisdiction. To allow an employee to recover the highest disability benefits of one type under the federal act and the highest disability benefits of another type under the state act without crediting would allow the employee to receive greater compensation than either act contemplated. As Justice Haerle observed in his dissent below, that is "exactly what the United States Supreme Court had in mind when it twice cautioned that 'double recovery' should not be permitted." (See *Sun Ship, supra,* 447 U.S. at p. 725, fn. 8 [65 L.Ed.2d at p. 466]; *Calbeck, supra,* 370 U.S. at p. 131 [8 L.Ed.2d at p. 379].)

Accordingly, we conclude credit for LHWCA disability benefits must be calculated on a dollar-for-dollar basis, regardless of category. Providing full economic credit as such comports with the purposes underlying each compensation scheme, is fair to both employers and employees, and is consistent with the system of crediting for successive and supplementary sister-state workers' compensation awards.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent. The question is whether despite Labor Code section 4661 the employer may reduce this longshore worker's state-mandated

---

[7]Lopez also argues his position is supported by *Bouford* v. *Bath Iron Works Corp.* (Me. 1986) 514 A.2d 470 and *Cross* v. *Newport News Ship. & Dry Dock* (1996) 21 Va.App. 530 [465 S.E.2d 598]. Those cases, like the Court of Appeal below, held that employers in state workers' compensation proceedings were entitled to category-by-category credit for LHWCA benefit payments, but not dollar-for-dollar credit. In light of our conclusions above, we find those decisions unpersuasive.

*permanent* disability indemnity simply because his federally required *temporary* disability indemnity exceeded the amount available under state law. By allowing such a reduction in violation of section 4661 the majority upset the balance of distinct economic interests embodied in California workers' compensation law.

Chris A. Lopez, a harbor worker at the Port of Oakland, injured his shoulder while lifting a heavy box overhead. The injury rendered him 20½ percent permanently disabled. For this permanent disability he was awarded $10,220—$140 for 73 weeks—under state workers' compensation law. He was also awarded $7,040.88 in federal permanent disability benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. §§ 901-950). Although the latter award was reversed on a federal administrative appeal, Lopez was not required to return the funds.

Lopez was out of work for more than a year during two nonconsecutive periods as a result of the injury. He was earning $540 per week, and was reimbursed for two-thirds of his wage loss—$25,457.14—as temporary disability indemnity under the LHWCA, at a rate of $360 per week. Thus his actual lost wages were approximately $38,166. Under state law he was entitled to $15,840 in temporary disability benefits for wage loss, at a rate of $224 per week—that is, reimbursement for about 41.5 percent of his likely wage loss.

Lopez and his employer stipulated that Lopez's injury was subject to the concurrent jurisdiction of the LHWCA and the California Labor Code.

A state workers' compensation judge observed that Lopez and his employer had agreed that state law entitled the employer to credit for payments made under the LHWCA. The judge explained: "The parties further agree that the applicant is not entitled to a 'double recovery' as a result of the concurrent jurisdiction. Therefore, the applicant concedes that the employer is entitled to a credit before the [Workers' Compensation Appeals Board] for all payments made under the LHWCA for benefits of the same class or species. That is, because temporary disability payments under the LHWCA are not subject to the rather low maximum rate found in the state system, the applicant is not entitled to any additional temporary disability payments under state law. Similarly, the applicant agrees that the employer is entitled to a credit against his state permanent disability award of permanent disability payments made to him under the LHWCA. [¶] . . . [¶] The only issue which remains undecided is whether the employer is entitled to a credit against the state permanent disability award for the LHWCA temporary disability payments in excess of the California temporary disability cap."

The workers' compensation judge ruled that any offsets must be confined to the same category of benefit: i.e., indemnity for temporary and for permanent disability. The Workers' Compensation Appeals Board (WCAB) denied a petition for reconsideration. Believing that it was further entitled to offset its state law permanent disability liability to the extent that LHWCA temporary disability payments exceeded those available under state law, the employer sought review.

Because the question presented is purely legal, the WCAB decision should be reviewed independently. Even under that less deferential standard, it is clear that its decision was correct and should be sustained.

Labor Code section 4661—unlabeled statutory references are to this code—could hardly be plainer in its specification that an injured worker must receive both temporary and permanent disability if entitled to both. It provides, as relevant here: "Where an injury causes both temporary and permanent disability, the injured employee is entitled to compensation for any permanent disability sustained by him in addition to *any payment* received by such injured employee for temporary disability." (Italics added.) As the italicized words emphasize, the statute does not limit such temporary disability payment to that received under state law.

The reason for the legislative requirement of full reimbursement for temporary and permanent disability is not hard to discern. "It must be remembered that temporary disability indemnity and permanent disability indemnity were intended by the Legislature to serve entirely different functions. Temporary disability indemnity serves as wage replacement during the injured worker's healing period for the industrial injury. [Citation.] In contrast, permanent disability indemnity compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have [*sic*] been attained. [Citation.] Permanent disability serves to assist the injured worker in his adjustment in returning to the labor market. [Citation.] Thus, in many instances the allowance of credit for a temporary disability overpayment against permanent disability indemnity can be disruptive and in some instances totally destructive of the purpose of permanent disability indemnity." (*Maples* v. *Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 827, 836-837 [168 Cal.Rptr. 884] (*Maples*).)

The majority violate the rule contained in section 4661 in the case of certain longshore workers—indeed they create a principle allowing the reduction or even the outright elimination of temporary or permanent disability payments mandated under state law. In announcing a rule that is

"destructive of the purpose of permanent disability indemnity" (*Maples, supra,* 111 Cal.App.3d at p. 837), the majority reduce Lopez's permanent disability entitlement under state law, if not his actual award, from $10,220 to $602.86. The Legislature did not intend this implausible result.[1]

In support of their conclusion, the majority quote section 4661 and *Maples, supra,* 111 Cal.App.3d 827, 836-837, and note the Court of Appeal's reliance on those authorities. They then assert that "we are not convinced section 4661 provides the answer" (maj. opn., *ante,* at p. 88), and proceed to declare that because section 4661 was last amended before certain changes occurred in federal law, "there is nothing in the history or context of section 4661 from which to infer a legislative intent to mandate a final recovery greater than that available under the state act by combining the most generous temporary and permanent disability benefits from separate federal and state awards without full crediting." (Maj. opn., *ante,* at p. 88.)

The sole rationale for this conclusion is that the Legislature last amended section 4661 in 1949 (Stats. 1949, ch. 107, § 1, p. 346), "long before [United States Supreme Court cases] and the 1972 amendments to the LHWCA confirmed that certain maritime injuries were subject to concurrent federal-state jurisdiction." (Maj. opn., *ante,* at p. 88.) But what the federal high court later "confirmed" was a regime of concurrent jurisdiction established by court decision a year and a week after the United States entered World War II. In *Davis* v. *Department of Labor* (1942) 317 U.S. 249 [87 L.Ed. 246, 63 S.Ct. 225], the court decided, albeit opaquely, "[a]fter a decade and a half during which there had not been formulated 'any guiding, definite rule to determine the extent of state power in advance of litigation,' *id.,* at 253, . . . that the border between federal and state compensation schemes was less a line than a 'twilight zone,' in which 'employees must have their rights determined case by case . . . ,' *id.,* at 256 [87 L.Ed. at p. 250]. Within this zone, *Davis* effectively established a regime of concurrent jurisdiction." (*Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715, 718 [65 L.Ed.2d 458, 461, 100 S.Ct. 2432] (*Sun Ship*).) The separate opinions in *Davis* made this clear. (317 U.S. at pp. 258-259 [87 L.Ed. at pp. 251-252] (conc. opn. of Frankfurter, J.); *id.* at p. 261 [ 87 L.Ed. at p. 253] (dis. opn. of Stone, C. J.) [the latter referring to the "overlapping dual system of the sort which the Court now espouses . . . ."].) When the Legislature last amended section 4661, concurrent jurisdiction over longshore compensation claims was in effect.

---

[1] It is true that, following deductions for attorney fees and the erroneous award of $7,040.88 in federal permanent disability indemnity, the sum at issue fell to $1,979.12. The fortuity of a large, erroneous and nonrefundable federal award in this case does not refute the fact that the majority's analysis reduces Lopez's *entitlement* for his 20½ percent permanent disability to almost nothing.

In sum, *Sun Ship* simply belies the majority's chronology. Moreover, even if the majority were chronologically accurate, their point would be irrelevant. We are governed by the words of section 4661. It plainly provides that employees are entitled to permanent disability benefits "in addition to *any payment* . . . for temporary disability." (Italics added.) "Any payment" means any, not just any state-mandated payment. Reducing Lopez's permanent disability entitlement from $10,220 to $602.86 because of temporary disability benefits mandated by federal law cannot be reconciled with section 4661. The majority do not attempt to do so. They never grapple with the words of section 4661, instead discussing anachronistically its "history" and "context" (maj. opn., *ante*, at p. 88). But history and context are interpretive aids to be utilized only if the plain language cannot be understood. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597-599 [54 Cal.Rptr.2d 695, 918 P.2d 999].) That is not the case here: the statute's meaning is clear.

The majority also rely on *Travelers Ins. Co.* v. *Industrial Acc. Com.* (1966) 240 Cal.App.2d 804 [50 Cal.Rptr. 114] (*Travelers*), for the principle that an employer is entitled to offset payments made under another regime against its state law liability regardless of category. That reliance is misplaced. By listing dollar amounts paid in that case for temporary and permanent disability (maj. opn., *ante*, at p. 89) the majority imply that *Travelers* addressed the issue of category-by-category credit. But it did not.

*Travelers* does contain language that, *if* the question of category-by-category credit had been at issue, conceivably might support the majority's conclusion. As they observe, *Travelers* stated that "it was proper for the [industrial accident] commission, in order to prevent a double recovery for the same injury, to allow a credit against the award made under the workmen's compensation law of California in a sum equal to the payments made on behalf of the insured under the workmen's compensation law of Alaska." (240 Cal.App.2d at p. 810.) But our relevant issue does not appear to have been before the *Travelers* court; accordingly the majority read too much into the decision. "It is axiomatic that an opinion is not authority for an issue not considered therein." (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 243 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

The same defect surrounds the majority's consideration of *Duong* v. *Workers' Comp. Appeals Bd.* (1985) 169 Cal.App.3d 980 [215 Cal.Rptr. 609], *Bobbitt* v. *Workers' Comp. Appeals Bd.* (1983) 143 Cal.App.3d 845 [192 Cal.Rptr. 267], and *Industrial etc. Exchange* v. *Ind. Acc. Com.* (1947) 80 Cal.App.2d 480 [182 P.2d 309]. In none of these cases was category-by-category credit at issue: rather, the issue was merely one of credit per se.

Evidently neither the parties nor the courts in those cases contemplated the question now before us. Of paramount significance—certainly of far greater significance than the isolated passages on which the majority rely—is the fact that it is impossible to tell whether the injured workers in *Duong*, *Bobbitt*, or *Industrial etc. Exchange* even suffered both temporary and permanent disability. As the Court of Appeal majority correctly explained, "[t]he above decisions seem to agree that 'double recovery' is impermissible, but they do not explain what that term means. The California decisions expressed a view that dollar-for-dollar credit was proper, but none of the courts had the issue before them, and so their statements are of no precedential value." The majority's statement that *Duong* and *Bobbitt* "expressed a view that . . . full economic credit for LHWCA benefit payments is proper" (maj. opn., *ante*, at p. 87) is simply incorrect. As stated, California law does not permit a double recovery for a compensable industrial injury; the question is whether credit must be extended fully or by category of benefit. No case relied on by the majority addresses that question.

By focusing on the issue of double recovery, the majority seem to suggest that Lopez will receive a windfall if the WCAB decision is upheld. The law and the facts establish the contrary. Even if the decision were upheld, as it should be, the $35,677.14 Lopez would receive—$25,457.14 for temporary disability and $10,220 for permanent disability—would not compensate him even for the full amount of his wage loss, much less for his 20½ percent permanent disability. As stated at the outset, Lopez's actual lost wages approximated $38,166. Counsel for amicus curiae California Applicants' Attorneys Association eloquently emphasized at oral argument that "[t]here's a small amount of money in dispute here, but that money may make the difference to the injured worker[s] as to whether or not they're able to make their mortgage payment, pay for their car or provide medical treatment for their children. So the amount of money is significant to the injured worker. . . . [T]he applicant hasn't been enriched—he's lost money. . . . [W]hat he received were two partial recoveries for two separate consequences of one injury. He received a temporary disability payment for the time he was completely unable to work, and then he received a permanent disability payment . . . because he has lost his ability for the rest of his life to compete in an open labor market, and his ability to work is impaired on a permanent basis; his ability to survive in our society is impaired on a permanent basis. Both of those payments together do not add up to all the things that the applicant has lost. In addition to lost wages, in addition to the loss of ability to compete in the open labor market, the applicant now has possible lost future earnings and pain and suffering for the rest of his life, and nothing is going to be paid for that, however this is worked out. So the

applicant, when all the benefits are put together, receives less than one full recovery. That can't be constituted as a double recovery."

The double recovery issue is, then, an unfortunate distraction. The majority and I recognize that "[a] basic premise of compensation law is that there shall be but a single recovery of benefits on account of a single injury or disability; to permit a double recovery would be to place a double burden on industry and encourage malingering; the right to recovery of compensation from more than one source is subject to the rule that a credit shall be allowed against an award for any payment to the extent that it permits a double recovery." (*Raischell & Cottrell, Inc.* v. *Workmen's Comp. App. Bd.* (1967) 249 Cal.App.2d 991, 997 [58 Cal.Rptr. 159].) But in this case there is no double recovery, however that term may be defined in workers' compensation law. Lopez and his employer stipulated that state law entitled the employer to credit for payments made under the LHWCA "for benefits of the same class or species," in the words of the workers' compensation judge. Double recovery is not at issue.

Nor, as amicus curiae explained at oral argument, is there a windfall of any kind. As the workers' compensation judge noted in his decision denying the employer permanent disability credit for temporary disability payments made under the LHWCA, "it cannot be said that the applicant was the beneficiary of a windfall, except in the sense that LHWCA benefits were *less inadequate* in making him whole for his wage losses than were state benefits. It is not as if the LHWCA benefits were so generous that there was an economic benefit to the applicant as a result of his industrial injury. Even the LHWCA benefits did not provide the applicant with full wage loss replacement." (Italics added.) There is no windfall here.

Indeed, a prime purpose of Congress in amending the LHWCA in 1972 was to alleviate "the paucity of relief under state compensation laws." (*Sun Ship, supra,* 447 U.S. 715, 723 [65 L.Ed.2d 458, 465], italics deleted.) A House of Representatives Education and Labor Committee report confirms *Sun Ship*'s statement: "[M]ost State Workmen's Compensation laws provide benefits which are inadequate," the drafters explained; "even the better State laws generally come nowhere close to meeting the National Commission on State Workmen's Compensation Laws recommended standard of a maximum limit on benefits of not less than 200% of statewide average weekly wages." (H.R. Rep. No. 92-1441, 2d Sess., p. 10 (1972) reprinted in 1972 U.S. Code Cong. & Admin. News, p. 4707.) The committee declared: "It is important to note that adequate workmen's compensation benefits are not only essential to meeting the needs of the injured employee and his family,

but, by assuring that the employer bears the cost of unsafe conditions, serve[] to strengthen the employer's incentive to provide the fullest measure of on-the-job safety." (*Id.* at p. 4699.)

In sum, if there is *any* source of California law that permits the employer herein to offset its liability for Lopez's state-mandated permanent disability benefits by the difference between his federal temporary disability award and the smaller award for temporary disability under state law, the majority have not identified it. If the Legislature had wanted to force a longshore laborer to choose between federal and state compensation, it could have done so. Louisiana did so, enacting a statute providing, " 'No compensation shall be payable in respect to the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions, or the Jones Act.' " (*Dempster* v. *Avondale Shipyards, Inc.* (La.Ct.App. 1994) 643 So.2d 1316, 1317, italics deleted.) There is no similar provision in California law.

By stripping injured longshore workers of all or part of a recovery to which they are entitled, the majority "alter the carefully constructed and fundamental balance between the rights and interests of employees and employers which is the cornerstone of workers' compensation laws." (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 285 [179 Cal.Rptr. 30, 637 P.2d 266] (dis. opn. of Richardson, J.).) "[I]t must be remembered that worker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests. . . . Worker's compensation laws are basically economic regulations by which the legislature, as a matter of public policy, has balanced competing societal interests." (*Mulder* v. *Acme-Cleveland Corp.* (1980) 95 Wis.2d 173, 180 [290 N.W.2d 276, 279-280].) The majority have forgotten this basic fact.

Finally, the majority may be understood to suggest that other jurisdictions' cases cited in 4 Larson, The Law of Workmen's Compensation (1996) Successive Awards, section 85.40, page 16-29 et seq., bolster their conclusion. (See maj. opn., *ante*, at p. 88.) But unless those other jurisdictions have a statute identical in language or effect to section 4661, such cases would not serve as persuasive authority on the question before us. The majority do not claim that the other jurisdictions have such a statute.

One out-of-state case that did consider this issue, *Bouford* v. *Bath Iron Works Corp.* (Me. 1986) 514 A.2d 470, reached a different conclusion from the majority. *Bouford*'s conclusion that no intercategory offset is available

when "superior" (*id.* at p. 474) state law benefits "are separate and distinct from the benefits . . . received under the LHWCA" (*id.* at p. 472) is, as I have shown, correct under California law. Although the Supreme Judicial Court of Maine relied in part on Maine law in reaching this conclusion (*id.* at pp. 472-473), its opinion buttresses the general principles articulated in this dissent. So does *Cross* v. *Newport News Ship. & Dry Dock* (1996) 21 Va.App. 530 [465 S.E.2d 598], which the employer, with commendable candor, called to our attention just before oral argument. By contrast, the out-of-state authority on which the majority rely, *McGowan* v. *General Dynamics Corp.* (1988) 15 Conn.App. 615 [546 A.2d 893], affirmed (1989) 210 Conn. 580 [556 A.2d 587], is seriously flawed: The court's nebulous opinion reveals that it was unsure whether to apply federal or state law. Here the majority recognize that the issue is a matter of state law. (Maj. opn., *ante*, at p. 85.) But they fail to follow state law to its logical end.

Section 4661 provides that an injured worker eligible for permanent and temporary disability indemnities is to receive both. The majority deprive Lopez of part of the former because he received the latter. I doubt that the Legislature intended to rob Peter to pay Paul. I therefore dissent.

Kennard, J., and Werdegar, J., concurred.