Filed 9/21/15  Hallmark Marketing Corp. v. WCAB and Gannon CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| HALLMARK MARKETING CORPORATION et al., | C077512 |
| Petitioners, | (WCAB No. ADJ3296187) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and CAROL ANN GANNON, | |
| Respondents. | |

In this workers' compensation writ of review proceeding involving the 1997 disability rating schedule, the workers' compensation judge (WCJ) disagreed with the disability evaluation unit (DEU) rater's conclusion that an industrial injury that limits the employee-applicant to working only from home is necessarily 100% permanent disability (termed a "sheltered workshop" or "sheltered workplace" by the DEU rater).  The WCJ, instead, applied the following legal standard:  An injured employee is 100% permanently disabled if having to work from home is necessitated by limitations that also render the employee unable to compete in the open labor market.  The WCJ eventually found for the

employee-applicant here, concluding there was no evidence presented from the employer that the applicant could compete in the open labor market.

The Workers' Compensation Appeals Board (WCAB), in denying the employer's petition to reconsider the WCJ's decision, did not adopt the WCJ's legal standard. Instead, the WCAB noted that because the DEU rater's "unimpeached testimony analogized the limitation to working from home to a sheltered workshop (100% permanent disability), applicant's ability to compete for jobs within the sheltered home environment is irrelevant to the issue of applicant's level of permanent disability."

We conclude (1) the WCJ applied the correct legal standard; (2) the applicant has the initial burden, under this standard, to show that she can work only from home in work that is not generally available; if the applicant meets this burden, the burden shifts to the employer to establish the applicant's ability to compete in the open labor market (i.e., to show there is work available that the applicant can perform); and (3) the WCJ could properly conclude on the present record that the employer failed to meet its burden. Accordingly, we annul the WCAB's opinion and order denying petition for reconsideration and remand this matter for the WCAB to reconsider, in light of these conclusions, the employer's petition for reconsideration.

## FACTUAL BACKGROUND

*Industrial Injury*

It is undisputed that Carol Ann Gannon (Applicant) sustained an industrial injury affecting her low back, neck, and bilateral carpal tunnels while working for petitioner Hallmark Marketing Corporation (Employer) in December 2000. Employer's workers' compensation insurer is petitioner Arrowood Indemnity Company.

2

*Work Restrictions*

Agreed Medical Examiner (AME) Michael A. Kasman, M.D., followed Applicant's orthopedic and neurological condition for 10 years, issuing his first report in March 2004 and his last report in September 2013.

In a lengthy report dated November 10, 2010, based on a comprehensive clinical reevaluation, and accepting certain aspects of Applicant's credibility, AME Dr. Kasman opined that Applicant "would be unable to sustain six to eight hours of work every day in a constructive, productive and consistent fashion. [She] would be able to work out of her home [(which actually means, in her home)] probably six to eight hours a day where she would be able to rest and take breaks and 'spread' the workday into a longer period. . . . [She] would be able on certain days to probably work between four and six hours a day, but other days not, and therefore I would consider that [she] is probably 100% disabled solely based on her orthopedic condition . . . ." Applicant has motion segment loss at two lumbar spine levels after two surgical fusions, one in 2004 and the other in 2007; in short, she has a "failed back syndrome with chronic pain."

AME Dr. Kasman's last report was dated September 24, 2013. He had last seen Applicant clinically at the November 2010 reevaluation. In this September 2013 report—which the WCJ ordered as a supplemental report to consider evidence that Applicant perhaps had walked two or more "5K" run/walks since her injury—Dr. Kasman noted that the 5K evidence did not alter his conclusions. Dr. Kasman reiterated his conclusions that Applicant might be able to work if she could spread out the work, and the work would have to be from home; that Applicant could function with semi-sedentary activity, but would be unable to maintain such activity on a consistent productive basis without pain interfering with her physical and cognitive capacities day after day, and that it was for this reason that he found Applicant 100% disabled. Dr. Kasman also noted that

3

Applicant's testimony at the WCJ trial indicated she was no better, and may have deteriorated somewhat in her daily tolerances.

### DEU Rater's 100% Permanent Disability Conclusion

At the WCJ trial, DEU rater Pia Hampton testified that "the leading factor for the 100 percent [permanent disability] is the analogy for 'can only work from inside of her home,' which is analogized to the sheltered workshop"; and "a sheltered workshop is a person . . . [who] can work but cannot work in a normal environment, work environment."

### Vocational Expert

Employer presented the only vocational expert in this case, Mary Ciddio. In a written report, Ciddio concluded (1) that Applicant "appears to be able to do work either at home or outside of the home on a part time basis—6 to 8 hours per day in a position where she can vary her sitting and standing"; (2) that options for work at home include "call center-like" jobs (but done at home accompanied by a personal computer) in customer service, technical support, quality assurance, medical transcription, and sales, with training available at the National Telecommunications Institute (with an office in San Francisco) and with opportunities at Alpine Access (Golden, Colorado) and 1-800 FLOWERS; and (3) that "[g]iven the medical documentation, it appears that [Applicant] would be able to compete in an open labor market and work on a part time basis with flexibility to change positioning as needed."

### Applicant's Testimony

At the WCJ trial, Applicant testified that she has pain throughout the day (and the night) that forecloses any lengthy sitting (one hour) or standing (the leaning forward hurts); that she cannot work for four consecutive hours because of pain; and that there might be something she could do for four consecutive hours some day, but she cannot imagine it ever being sustainable. Applicant did acknowledge she has traveled outside

4

the United States four or five times in the last three or four years (she has a daughter who lives in England; the plane had seats that recline so she could lie down).

## PROCEDURAL BACKGROUND

*The WCJ's Decision*

The WCJ found Applicant to be 100% permanently disabled.

According to the WCJ, there is sufficient evidence that Applicant is unemployable outside the home because of her variable ability to work continuously and because of her need to rest, take breaks, and spread out the workday so as to manage her pain while working.

The harder question, said the WCJ—in determining whether Applicant is 100% permanently disabled—is whether these limitations render Applicant unable to compete in the open labor market. The WCJ disagreed with the DEU rater's conclusion that having to work from home *necessarily* results in 100% permanent disability (what the DEU rater termed a sheltered workplace). According to the WCJ, "[i]t is sheltered employment [(i.e., 100% permanent disability)] if having to work from home is necessitated by limitations which also render the injured worker uncompetitive in the labor market."

The WCJ noted that the only evidence on this harder question (i.e., Applicant's ability to compete in the open labor market) was vocational expert Mary Ciddio's opinion and Applicant's testimony. In ruling in Applicant's favor on this question, the WCJ concluded that "Ms. Ciddio tells us that work exists within [Applicant's] limitations, but [Ciddio] does not address [Applicant's] ability to compete in the open labor market for those jobs"; that is, "Ms. Ciddio did not take into consideration [Applicant's] variable ability to perform the functions of the [at-home] occupations she felt [Applicant] was

5

qualified to perform.  That being the case, there is no evidence [from Employer] that [Applicant] can compete in the open labor market for employment."

### *The WCAB's Decision*

The WCAB denied Employer's petition to reconsider the WCJ's decision.  In doing so, however, the WCAB did not adopt the WCJ's rejection of vocational expert Ciddio's conclusion that Applicant was able to compete in the open labor market with at-home employment.  The WCAB took this view "because Ms. Ciddio's [report] that [Applicant] could compete for jobs from home does not change the fact that [Applicant] is limited to a home work environment.  Because the DEU rater's unimpeached testimony analogized the limitation to working from home to a sheltered workshop (100% permanent disability), [Applicant's] ability to compete for jobs within the sheltered home environment is irrelevant to the issue of [Applicant's] level of permanent disability."

We granted Employer's request for a writ of review.

### *The Issues that Employer Presents for Review*

Restated, the issues Employer presents for review are (1) what is the proper definition of a sheltered workshop (i.e., what is the proper legal standard for finding 100% permanent disability in the context of a work restriction limiting an applicant to "at-home-only" employment only)?[1] (2) in applying that legal standard, who has the burden of proof in establishing an applicant's ability to compete in the open labor market? (3) was there sufficient evidence here of such 100% permanent disability? and (4) did the WCJ or the WCAB err in failing to reopen the case to consider the most recent medical report (Jan. 13, 2014) regarding Applicant's work restrictions?

---

[1] Because the term "sheltered workshop," in the workers' compensation context, is neither a creature of statute nor defined clearly in case law, we prefer not to confuse matters by using this label; instead, we will refer in this opinion to the legal standard for finding "100% permanent disability" in the context of an at-home-only work restriction.

6

*Standard of Review*

We are bound by the WCAB's factual findings if supported by substantial evidence. However, we decide questions of law independently, though the WCAB's determinations of such questions are entitled to great weight unless clearly erroneous. (*Gamble v. Workers' Comp. Appeals Bd.* (2006) 143 Cal.App.4th 71, 86 (*Gamble*).)

**DISCUSSION**

**I. The WCJ Applied the Proper Legal Standard for Finding 100% Permanent Disability in the Context of a Work Restriction of At-home-only Employment**

As noted, the WCJ disagreed with the DEU rater's conclusion that *having* to work from home because of a work restriction *necessarily* results in 100% permanent disability. According to the WCJ, an injured worker is 100% permanently disabled if having to work from home is necessitated by *limitations which also render* that worker unable to compete in the open labor market. We think the WCJ has set forth the proper legal standard in this context.

In the information age in which we find ourselves, the digital revolution—with its advent of personal computing and the Internet—has substantially increased the possibilities of working from home. This has rendered obsolete the DEU rater's view that having to work from home necessarily results in 100% permanent disability. Nevertheless, being restricted to working only from home obviously does not work for everyone. The WCJ's formulation of 100% permanent disability in this context succinctly encapsulates these contemporary realities in a practical standard, and accords with case law. As case law has recognized, " '[o]nce [an injured] employee's condition has become permanent and stationary, he or she is entitled to permanent disability indemnity; these benefits are intended as reimbursement for the employee's impaired future earning capacity or decreased ability to compete in the open labor market.' "

7

(*Gamble*, *supra*, 143 Cal.App.4th at p. 80, quoting *Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1179-1180.)

## II. The Employer Has the Burden of Establishing an Applicant's Ability to Compete in the Open Labor Market in the 100% Permanent Disability Context of At-home-only Employment That Is Not Generally Available

In considering this issue we start with the temporary disability context, though, as we shall explain, this odd foray has its purpose.

In distinguishing between temporary partial disability and temporary total (i.e., 100%) disability, California courts follow the "odd lot" rule. (*Meyers v. Industrial Acc. Com.* (1940) 39 Cal.App.2d 665, 668-669 (*Meyers*); see *Transport Indem. Co. v. Industrial Acc. Com.* (1958) 157 Cal.App.2d 542, 546; see also 1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2005 (rev. 2014)) § 4.3, p. 4-4.) Under this rule, once the injured employee proves temporary partial disability—in line with the employee's recognized burden to prove the industrial causation of her injury and to prove disability—the burden shifts to the employer to establish the employee's ability to compete in the open labor market (i.e., to show there is work available that the employee can perform). If the employer cannot establish that such work exists, the employer must pay the employee temporary total disability. (1 Cal. Workers' Compensation Practice, *supra*, at § 4.3, p. 4-4; see 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2014) § 26.06[6], p. 26-38.)

*Meyers* found the "odd lot" rule "admirably stated" in an English (King's Beach) decision, *Cardiff Corp. v. Hall* (1911) 1 K.B. 1009, as follows:

" ' "If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well-known branch of the labor market—if, in other words, the capacities for work left to him fit him only for special uses, and do not, so to speak, make his powers of labor a merchantable article in

some of the well-known lines of the labor market,— . . . it is incumbent on the employer to show that such special employment can, in fact, be obtained by him. [In short,] . . . if the accident leaves the workman's labor in the position of an 'odd lot' in the labor market, the employer must show that a customer can be found who will take it." ' " (*Meyers*, *supra*, 39 Cal.App.2d at p. 669.)

Given that the workers' compensation law insures only against incapacity for work and not against lack of opportunity to work, *Meyers* further noted in this vein:

" 'The authorities [on the "odd lot" rule] draw a distinction between cases in which it appears that the injured employee can do light work of a general nature and where he is only fitted to do "odd" jobs, or special work, not generally available. In the former, the burden is on the [injured employee]; the presumption being that his inability to obtain employment is due to the fluctuations in the labor market and not to the consequences of the accident. In the latter, the burden is on the employer to show that such special work is available to the [injured employee].' " (*Meyers*, *supra*, 39 Cal.App.2d at pp. 668, 669, quoting *White v. Tennessee Consolidated Coal Co.* (1931) 162 Tenn. 380, 385 [36 S.W.2d 902, 904.)

We recognize that the distinction between temporary disability (wage loss) and permanent disability (permanent impairment) is well established. (*Appleby v. Workers' Comp. Appeals Bd.* (1994) 27 Cal.App.4th 184, 194.) Nevertheless, we find the "odd lot" rule works well in allocating the burden of proof in the 100% permanent disability context of work restrictions that limit an injured employee to at-home-only work. This is because such an employee generally finds herself in an even "odder lot" in the labor market than the injured employee in the temporary disability context (the context in which the "odd lot" rule was developed). Consequently, once an injured employee has shown that her injury was industrially caused and that she can work only from home in work that is not generally available, the burden shifts to the employer to establish the

9

employee's ability to compete in the open labor market (i.e., to show there is work available that the employee can perform).  Accordingly, here, if there were any "odd lots" of employment available to Applicant that she could perform, Employer had the burden of establishing them.

**III.  The WCJ Properly Could Find on the Present Record That Employer Failed to Meet Its Burden of Showing That Applicant Could Compete in the Open Labor Market (i.e., Failed to Show There Was Work Available That Applicant Could Perform)—Stated Otherwise, There Is Sufficient Evidence to Conclude That Applicant is 100% Permanently Disabled**

Based on the facts summarized previously in the Factual Background of this opinion, we agree with the WCJ's following analysis that effectively found there is sufficient evidence that Applicant is 100% permanently disabled, if the proper legal standard and burdens of proof are applied here:

"It is [Applicant's] burden to prove disability.  She has [done so by] prov[ing]: that her disability requires her to work from home; she cannot work a consistent number of hours; and, she cannot consistently work at predictable times of the day . . . ."  "On th[e] issue [of Applicant's ability to compete in the open labor market], the only evidence is [vocational expert] Ms. Ciddio's opinion and [Applicant's] testimony.  Ms. Ciddio tells us that work exists within [Applicant's] limitations, but she does not address [Applicant's] ability to compete in the open labor market for those jobs."  Although Ms. Ciddio concluded that, given the medical documentation, it appears that Applicant would be able to compete in an open labor market, "Ms. Ciddio did not take into consideration [Applicant's] *variable ability* [(i.e., the two inconsistencies just noted)] to perform the functions of the occupations she felt [Applicant] was qualified to perform.

That being the case, there is no evidence [from Employer] that [Applicant] can compete in the open labor market for employment." (Italics added.)[2]

## DISPOSITION

The WCAB's opinion and order denying petition for reconsideration is annulled and we remand this matter for it to reconsider, in light of this opinion, the petition for reconsideration. Employer and its worker's compensation insurer, Arrowood Indemnity Company, are awarded their costs. (Cal. Rules of Court, rule 8.493(a)(1)(A).)


       BUTZ       , J.


We concur:


    NICHOLSON    , Acting P. J.


    RENNER    , J.

---

[2] Finally, Employer contends that, given AME Dr. Kasman's allegedly stale reports, the WCJ and the WCAB erroneously refused to reopen this matter to consider treating physician M. Peggy Portwood, M.D.'s January 13, 2014 report outlining Applicant's current work restrictions. We disagree. As noted, Dr. Kasman's last report was September 24, 2013 (admittedly, not based on a clinical evaluation at that time). Dr. Portwood's January 13, 2014 report states: "Work Status: . . . [Applicant] remains permanent and stationary. Her ability to return to work—Not in her prior occupation. [¶] . . . [¶] Limitations: . . . No prolonged walking; change positions as needed. No bending, lifting, twisting, and no bending, lifting and twist[ing] with carrying weights."

11